THE PEOPLE OF THE STATE OF ILLINOIS

*v.*

WILLIAM F. TOMPKINS *et al.*

1. SURETY — *undertaking construed strictly.* The contract of a surety is construed strictly and his liability will not be extended by implication.

2. SAME — *bond of grain inspector.* The sureties of a chief inspector of grain in a city, appointed under the " act to regulate public warehouses and the warehousing and inspection of grain, and to give effect to article thirteen of the constitution of this State," are not responsible for moneys collected by him for inspection, in a suit upon his bond, where the duty of collecting and taking care of such fund is not imposed on him before the execution of his bond.

WRIT OF ERROR to the Circuit Court of Cook county.

This was an action of debt by the People of the State of Illinois against William F. Tompkins, as grain inspector, and Aquilla H. Pickering, John B. Lyon, Wiley M. Egan, George H. Sidwell and David H. Lincoln, his sureties upon his official bond.

The following is a copy of the declaration, omitting the formal parts :

" For that, whereas, the said Tompkins heretofore, to wit, on the 3d day of July, A. D. 1871, was duly appointed and commissioned by the then governor of said State of Illinois, by and with the advice and consent of the senate of said State, to the office of chief inspector of grain in and for the city of Chicago, in said Cook county, and that he, the said Tompkins, then and there accepted the said appointment and commission to said office, and entered upon the duties thereof; and that the said Tompkins as principal, and the said Pickering, Lyon, Egan, Sidwell and Lincoln as sureties, afterward, to wit, on the 31st day of July aforesaid, and upon the entering of him, the said Tompkins, upon the duties of said office, executed and delivered to the said plaintiffs, as the official bond of said Tompkins as such chief inspector, the bond hereinafter described; and that he, the said Tompkins, on the day and year last aforesaid, upon entering upon the duties of said office, took and subscribed in due form of law an oath of office as such chief inspector of grain; and that on the day and year last aforesaid, in the county aforesaid, the said defendants, by their writing obligatory, bearing date of that day, and sealed with their seals, did acknowledge themselves to be held and firmly bound to the said plaintiffs in the sum of $50,000, to be paid to said plaintiffs; which said writing obligatory was and is subject to a certain condition thereunder written, whereby, after reciting, to the extent that the said Tompkins had been appointed and duly commissioned chief inspector of grain for said city of Chicago, it was provided that if he, the said Tompkins, should faithfully and strictly discharge the duties of said office of chief inspector according to law and the rules and regulations prescribing his duties; and pay all damages to any person or persons who might be injured by reason of his neglect or failure to comply with the law and the rules and regulations aforesaid, then said writing obligatory was to be void, otherwise to be and remain in full force and effect, as by the said writing obligatory and by the said condition thereof appears.

" And the said plaintiffs further complain and say that the

said Tompkins, on the day and year last aforesaid, in said county, entered upon the discharge of the duties of said office, and continued to discharge the same up to and till the 8th day of April, A. D. 1873; and that, to wit, on the day and year last aforesaid, said Tompkins was lawfully removed from said office by the governor of said State, and one William H. Harper was then and there duly and lawfully appointed and commissioned to said office of chief inspector by the said last-named governor in place and instead of said Tompkins; and that the said Tompkins then and there surrendered the said office of chief inspector to said Harper as his successor, and ceased to act as such chief inspector; and that the said Harper then and there entered upon the duties of said office as he lawfully might, and has ever since continued to be and act as such successor to the said Tompkins.

" And the plaintiffs aver that before the performance of the acts and commission of the grievances hereinafter mentioned, to wit, on the 2d day of August, A. D. 1871, and from time to time subsequently thereto, the board of railroad and warehouse commissioners fixed and regulated the charges for the inspection of grain in such manner as would, in the judgment of said commissioners, produce sufficient revenue to meet the necessary expenses of the service of inspection, and no more; and, also, to wit, on the 2d day of August, A. D. 1871, fixed and regulated the manner in which such charges for inspection should be collected, in pursuance of the statute in such case made and provided; that is to say, the board of railroad and warehouse commissioners then and there adopted certain rules and regulations whereby the said chief inspector of grain was authorized to collect such charges for the inspection of grain as might be established from time to time by the said commissioners, and therewith to pay for the services of all persons employed in such inspection service or department, monthly, together with such other additional expenses of office, rent, stationery, etc., as might be necessary, etc.

" And said plaintiffs further complain and say that it became

and was the duty of said Tompkins, as such chief inspector of grain, during his continuance in said office, to faithfully, strictly and impartially inspect, or cause to be inspected, grain in the city of Chicago, and collect and receive the lawful fees for such inspection, in accordance with the rules and regulations of said board of railroad and warehouse commissioners; and that the said Tompkins did, during his continuance in said office of chief inspector, inspect or cause to be inspected large quantities of grain in said city of Chicago, and did then and there lawfully collect and receive as lawful fees for such inspection a large sum of money by virtue of said office of chief inspector; and that it was his duty, on his removal from said office as aforesaid, to deliver and pay over to the said Harper, the said successor of him, the said Tompkins, in office, all the fees which he, the said Tompkins, then and there had in his possession, arising and accruing from the inspection of grain, by and under said Tompkins, as such chief inspector; and that he, the said Tompkins, at the time of his removal from said office as aforesaid, had in his custody and possession, in his official capacity as such chief inspector, a large sum of money, to wit, the sum of $1,666.98, arising and accruing from the said fees for such inspection of grain, collected and received by him as such chief inspector; which said sum of money said Tompkins has not at any time paid out to defray the expenses of said inspection service; and which sum of money it was then and there the duty of said Tompkins to deliver and pay over to said Harper on demand therefor. Yet the said plaintiffs complain and say that the said Tompkins did not then and there, and has not yet delivered and paid over to said Harper said sum of $1,666.98, or any part thereof, although he, the said Tompkins, was then and there duly and lawfully required so to do by the said railroad and warehouse commissioners, and requested so to do by the said Harper, but hath converted the same to his own use. By means whereof, and by reason of which said premises, an action hath accrued to the said plaintiffs to demand, have and receive of said defendants the said sum of $50,000 above demanded.

Yet the said defendants have not paid to said plaintiffs the said last-named sum of money, or any part thereof, but refuse so to do, to the damage of said plaintiffs of the sum of $1,666.98, and therefore do said plaintiffs bring this suit," etc.

The court sustained a general demurrer to the declaration and rendered judgment against the people for costs.

Mr. James K. Edsall, Attorney General, for the People, made the following points:

1. That it was the duty of the chief inspector to receive the fund in question.

2. That it was his duty, upon removal from office, to pay the same over to his successor.

3. The sureties upon an official bond are liable for the discharge of duties germane to the office which are subsequently enjoined upon their principal, by competent authority, citing *Smith* v. *Peoria County*, 59 Ill. 412, 425 ; *Governor* v. *Ridgway*, 12 id. 14.

4. The court erred in rendering judgment against the People for costs, citing *The People* v. *Cloud*, 50 Ill. 439 ; *The People* v. *Pierce*, 1 Gilm. 555.

Mr. S. K. Dow, and Mr. Frank J. Smith, for the defendants in error :

The words of an official bond must be construed with reference to its recitals, and to the nature of the office or appointment, and the nature and duties of the office must be learned from the statute itself.

The liability of a surety cannot be extended by implication beyond the terms of the contract.

Mr. Justice Scholfield delivered the opinion of the Court :

Unless the collection and custody of the fund involved in this controversy can be held to have been fairly within the contemplation of the parties at the time of the execution of the bond, there can be no recovery, for no principle of law is

better settled than that the contract of a surety is to be construed strictly, and his liability cannot be extended by implication beyond the terms of his obligation. As observed by STORY, J., in *Miller* v. *Stewart et al.* 9 Wheat. 680 : " To the extent, and in the manner and under the circumstances pointed out in his obligation, he is bound, and no further." *Reynolds* v. *Hall et al.* 1 Scam. 35 ; *People, etc.,* v. *Moon,* 3 id. 123 ; *Governor, etc.,* v. *Ridgway,* 12 Ill. 14 ; *C. & A. R. R. Co.* v. *Higgins et al.* 58 id. 128 ; *Smith* v. *Peoria County,* 59 id. 425.

By the fourteenth section of the " act to regulate public warehouses, and the warehousing and inspection of grain, and to give effect to article thirteen of the constitution of this State," in force July 1, 1872, Laws of 1872, pp. 767–8, it is made the duty of the governor, by and with the advice and consent of the senate, to appoint a person having the qualifications therein prescribed chief inspector of grain for every city in which is located a warehouse of class A, who shall hold his office for the term of two years, unless sooner removed. It is the duty of the inspector thus appointed to have a general supervision of the inspection of grain, as required by the act or the laws of the State, under the advice and immediate direction of the board of commissioners of railroads and warehouses. He is authorized to nominate to the commissioners of railroads and warehouses assistant inspectors, and such other employees as may be necessary to properly conduct the business of his office, and the commissioners are authorized to make the appointments. Upon entering upon the duties of his office the chief inspector is required to execute a bond to the people of the State in the penal sum of $50,000, with sureties to be approved by the board of commissioners of railroads and warehouses, conditioned that " he will faithfully and strictly discharge the duties of his said office of inspector according to law, and the rules and regulations prescribing his duties, and that he will pay all damages to any person or persons who may be injured by reason of his neglect, refusal or failure to comply with the law and the rules

and regulations aforesaid." The assistant inspectors are required to execute bonds in the penal sum of $5,000, in form the same as that of the chief inspector, and it is provided that suits may be brought upon all such bonds for the use of *any person injured*, but there is no provision expressly authorizing suits to be brought thereon for the use of successors in office.

The bond follows the language of the statute, but neither in its condition nor in any part of the statute is there language referring directly to the anticipated collection and custody of money by the chief inspector, on any account. True, power is conferred by the statute upon the commissioners of railroads and warehouses to fix the rate of charges for the inspection of grain and the manner in which it shall be collected, but it does not designate the chief inspector, nor require that he shall be selected as the collector and custodian of the fund thus to be raised. The duty expressly enjoined upon the chief inspector is to have a general supervision of the inspection of grain, as required by the act or the laws of the State, which is to be discharged under the advice and immediate direction of the board of commissioners of railroads and warehouses, who are empowered to make all proper rules and regulations for the inspection of grain. The sureties of the chief inspector, when executing the bond, must have within their contemplation whatever may relate to the supervision of inspection, but the collection of the charges for inspection, and the custody of the fund thus to be raised are distinct and independent acts, and the duty to perform them cannot be necessarily implied from the duty to have supervision over inspections, for manifestly they might be performed by some person other than the chief inspector, with equal propriety. Undoubtedly, the chief inspector may be selected to perform these acts, but it is impossible to foresee that he will be selected until the board of commissioners of railroads and warehouses have so indicated by their action.

When the bond of Tompkins was executed therefor, his sureties were not chargeable with knowledge by the law that he would be required to collect and have the custody of the

fund in controversy, and since the declaration shows that the commissioners of railroads and warehouses did not, until after the execution of the bond, adopt the rules and regulations by virtue of which he did collect and obtain the custody of that fund, it follows it cannot be held within the contemplation of the parties in executing the bond that they were assuming any liability on that account, and that the demurrer was properly sustained.

Had the duty been enjoined upon Tompkins, as chief inspector, when the bond was executed, to collect this fund and retain its custody, a different and much stronger case in favor of the plaintiffs would have been presented. It is sufficient for the present, however, that no such case is presented by this record, and its merits need not be discussed.

The judgment, against the People for costs was erroneous, but this will be modified and the proper judgment rendered in this court, the error being purely formal and incapable of producing substantial injury to the people.

The judgment below is modified and affirmed.

*Judgment affirmed.*

Scott and Craig, JJ., dissenting.