THE STATE *to the use of Carroll County* v. ROBERTS *et al.,*
*Plaintiffs in Error.*

**Sureties on Collector's Bond**: EFFECT OF LEGISLATION EXTENDING TIME FOR SETTLEMENT. A change in the law by which the time for the annual settlements of county collectors is fixed a month later than that provided in the former law, and additional time is allowed in which to pay after settlement, operates to release the sureties on a collector's bond executed before the change. The effect of such a change is to postpone the State's right of action against the collector; and the rule that an extension of time given to the principal releases the surety, applies as well between the State and an individual, as between individuals.

*Appeal from Carroll Circuit Court.*—HON. E. J. BROADDUS, Judge.

*Hale & Eads* for plaintiffs in error.

HENRY, J.—Roberts was elected sheriff of Carroll county at the general election held in November, 1868, for the term of two years. By his election and qualification as sheriff, he became *ex officio* collector of the State and county revenue, and as such executed the bond which is the foundation of this action against him and his securities thereon.

The law in force at the date of the bond, relative to the question involved in the controversy, is to be found in the general statutes of 1865, sec. 10, p. 113; secs. 44, 52, pp. 117, 118, and the session acts of 1870, secs. 3, 6, p. 121. The condition of the bond executed by defendants is in conformity to the requirement of section 10, page 113, and is that the collector " will faithfully and punctually collect and pay over all the State and county revenue for the year next ensuing his appointment, and that he will, in all things, faithfully perform all the duties of his office as collector according to law." Section 44, page 117, provided that " at the term of the county court, to be held on the 3rd Monday in December, (except in St. Louis county, &c.,)

the collector shall return the delinquent list under oath or affirmation, to such court, and settle his account of all moneys received by him on account of taxes and other sources of revenue, and the amounts of such delinquent list, or so much thereof as the court shall find properly returned delinquent, shall be allowed and credited to the collector on his settlement." Section 52, " every collector, except the collector of St. Louis county, shall annually, within thirty days after his settlement on the third Monday in December, with the county court, settle his account with the State auditor and pay into the State treasury the whole amount of the revenue and other funds with which he may stand charged, after deducting his commissions and mileage; and the treasurer shall give duplicate receipts for the amount paid, one of which shall be deposited with the auditor."

By the act of 1870, section 44 was so amended by section 3 as to require the settlement by the collector to be made with the county court on the 3rd Monday in January instead of the 3rd Monday in December, and section 52 was so amended by section 6 as to require the payment into the State treasury by the collector within thirty days after the settlement contemplated by section 3 of the balance of all revenues then due to the State, &c.

It is contended by the securities, that this extension of time for the settlement by the collector, discharged them from liability on the bond. As between individuals, if the creditor for a valuable consideration, agree with the principal debtor to extend the time of payment or the demand without the consent of the sureties, they are discharged from liability. Is the same principle applicable to the State as a creditor? It may be urged that the State, receiving no consideration for the indulgence, does not by an act of the General Assembly extending the time, thereby release the securities. It may be answered that the only reason why, as between individuals, there must be a valid agreement to extend the time in order to release sureties

who have not consented to the extension is, that otherwise it is not obligatory upon the creditor and his right to demand and sue for the debt is not suspended, there being no way except by a valid contract to make a promised extension binding upon the creditor. But the acts of the General Assembly are binding upon every citizen and every officer of. the State, and by a legislative enactment the extension is as effectual as an extension secured by a valid contract between an individual creditor and his debtor. The fact that acts of the General Assembly of this character are repealable at the pleasure of that body, cannot affect the question, because the suspension of the right of the State to sue upon her demand, has been accomplished from the date of the approval of the bill until its repeal, and if the right of the creditor to proceed against the principal is postponed but for a day, as between individuals, it as effectually discharges the sureties as if it had been suspended for a month or a year.

The State cannot, by a legislative act, materially modify a contract between herself and a citizen, any more than she can impair the obligations of a contract between citizens. The Legislature cannot increase or vary the obligations of a citizen in a contract entered into by him with the State, and the effect of such legislation as we are considering, if it does not release the security, is to extend his liability on the bond for a longer period of time than he agreed to be bound, and to increase the risk he has taken beyond that which he assumed when he executed the bond. By the law, when the obligation was entered into, the collector was required to settle with the county court on the 3rd Monday in December. By the act of 1870, that settlement was postponed to the 3rd Monday in January. No officer in the State, nor any judicial tribunal could, after the act of 1870, demand of the collector a settlement before the 3rd Monday in January, or the payment of the balance of moneys then in his hands within thirty days after such settlement; and to hold the securities liable, under these

circumstances, would be to declare that the State, by an act of the Legislature, may extend the time for which the securities have agreed to be bound for the principal, and by thus modifying the contract, hold them liable for risks which they did not agree to take. The State has no more right or authority to change a contract betwixt her and an individual, than she has to compel the individual to make such a contract in the first instance.

A fundamental principle of constitutional law underlies the application of this doctrine to the State, as well as the familiar principle of the common law, upon which the securities rely. It is true, as is said in some of the cases, that the time fixed by law for the settlement by the collector at the date of the bond, is no part of the contract. It is no part of the contract, in the sense, that if in consequence of the negligence of those officers who are required to settle with the collector, or for any other reason, except an interposition by the State by legislative enactment preventing it, the settlement should not be made at the time required by the law in force at the date of the bond, such failure would operate to discharge the securities. Laches is not imputable to the State, and this is the doctrine announced by the Supreme Court of the United States in *United States v. Kirkpatrick*, 9 Wheat. 720; *United States v. Vanzandt*; *United States v. Nicholl*, 12 Wheat. 509; *United States v. Boyd et al.*, 15 Peters 187, 208.

These cases are cited by the Virginia court of appeals in the *Commonwealth v. Holmes*, 25 Grat. 771, in support of the doctrine that the securities are not released in a case like the one under consideration; but we submit, that, except the case in 9th Wheaton, they only hold, as above indicated, that mere neglect to call the officer to a settlement at the time prescribed by the law, will not release the securities; that laches is not imputable to the government. In 9th Wheaton, *United States v. Kirkpatrick*, the Supreme Court of the United States, so far from holding the doctrine of the Virginia court, expressly decided " that the

liability of the sureties was strictly confined to the duties and obligations created by the acts passed antecedent to the date of the bond." The court also remarked, the opinion being delivered by Judge Story : "There is nothing in the original act, under which the appointment was made, which contemplates a permanent and continuing liability for all duties under all laws which might be subsequently passed."

The *People v. Jansen,* 7 John. 332, was an action of debt on a bond executed by defendant's father, in his lifetime, on the 18th day of April, 1786, as one of the securities of Christian Tappen, one of the loan officers of Ulster county. The defense was that no deficiency on his part appeared to have been taken notice of by the supervisors until the year 1795, and no steps were taken by the supervisors to remove the loan officers, and they were not removed until January, 1804; though the evidence showed that the deficiency of the loan officer began in 1791, and continued for several successive years. In December, 1798, the supervisors ordered suits to be commenced on their bonds, against the loan officers, for their deficiencies, but they were not prosecuted, and the loan officers were indulged from time to time, to make good their deficiencies, until the year 1803, when suits were again directed to be prosecuted against them. Henry Jansen, defendant's father, and one of Tappen's sureties, died in 1794. In the year 1798, Tappen was solvent and in good credit, and had the suit against him been prosecuted with usual diligence, to judgment, the whole arrears might have been collected. The Supreme Court of New York held that the foregoing facts constituted a good defense to the action, and the court said: "This case differs essentially from the ordinary case of a security in a bond to a private individual. In such case, the obligee is under no positive injunction or legal obligation to watch over the conduct of his principal debtor, and at stated periods to examine into his accounts, and in case of failure in punctual payment to adopt meas-

ures calculated to relieve the security. The risk of insolvency of the principal is assumed by the surety, and the liability of the latter continues, unless he should at least require of the creditor to enforce the payment. But the situation of the security in this case is widely different. The statute under which the bond was taken, makes it the duty of the supervisors in each county, together with one or more of the judges of the common pleas, annually to meet and carefully to inspect and examine the minutes and accounts of the loan officers, and if it be found that any loan officer has refused or neglected to perform the duty enjoined upon him, they are directed to elect another in his stead. The security had a right to look to the provisions of this statute, and to calculate his liability on the presumption that the duties enjoined on these public officers would be faithfully and punctually discharged; and, if so, that he could in no event be responsible for more than one year's deficiency. There can be no doubt that the plaintiffs are chargeable with the consequences of the neglect or breach of duty of their agent or public officers intrusted with this business." This case, it will be perceived, carries the doctrine far beyond that held by the Supreme Court of the United States, and while we might not incline to give our assent to the doctrine of that case to its full extent, we cite it in support of the doctrine of the other cases cited, because of the respectability of the court by which the *People v. Jansen* was decided.

In *McCurdy v. Brown & Gibson*, 8 Mo. 550, which was an action against a constable and his securities for the failure of the constable to return an execution, the court held, Scott, J., that "when the security in this case executed the bond by which he is bound, the liability thus incurred was fixed and ascertained by law. Can the Legislature then, by a subsequent act, say that this liability shall be increased? The existence of such a power in the General Assembly cannot be maintained under our form of government." In the case of *Robert Pybus v. Henry Gibb, John*

*Bolton and Wm. Hindmarsh*, 88 Eng. Com. Law Rep. 902, Lord Campbell, C. J., said : " It may be considered settled law that where there is a bond of suretyship for an officer, and by the act of the parties, or by act of Parliament, the nature of the office is so changed that the duties are materially altered, so as to effect the peril of the sureties, the bond is avoided. Even if the sureties were consenting parties to such a change, it could hardly affect their liability under the bond." Again he said : " There being then such an increase of the jurisdiction of the court as to amount to a change in the nature of the court by giving bankruptcy jurisdiction and jurisdiction over absconding debtors, and the table of fees being altered, I think the office (bailiff of the court) is essentially changed and the sureties no longer liable. It was said that the breach here was one for which the sureties would have been liable if the office had remained unchanged. I think it would be most inconvenient if the sureties were liable for the breach of the original duties of the office and not for those superadded, so as to require discrimination as to duties all of which are performed by the same officer in the same office. But we need not discuss that; for we have the express authority of the House of Lords upon it in *Bonar v. MacDonald*, 3 H. L. Ca. 226. That was an appeal from Scotland, but on this subject the laws of the two countries are essentially the same. It was not the case of an office, but of an employment; fresh duties had, without the consent of the surety, been added to the employment, and then the principal made a default that was within the scope of his original employment; for that default the action was brought; it was argued then as here, that the liability should be the same as before; but the House of Lords, affirming the judgment below, held that after the addition of fresh duties the employment was essentially altered, and the sureties discharged. That is precisely in point. There is no inconvenience; for when an act of Parliament alters the duties of an officer, it will be easy to require him to give fresh sureties, or the

surety bonds may be framed as suggested by Maule, J., in *Mayor of Berwick v. Oswald*, 3 E. & B. 665, (E. C. L. R., vol. 77,) so as to continue the liability of the sureties, whatever alteration might take place by act of the Legislature. As it is, I think the liability of the sureties on this bond at an end." The other judges, in separate opinions, concurred with the chief justice.

In the following cases it was directly held that the doctrine on this subject, which obtains betwixt individuals, is equally applicable to the State: *Prairie & Jenkins v. Jenkins Pub. Treasurer*, 75 N. C. 546; *Davis et al., v. The People*, 1 Gilman (Ill.) 409. In this case it was expressly decided that where an act of the Legislature gave a collector of taxes a longer time in which to make payment than he had by the law in existence when he executed his official bond with sureties, the sureties were fully discharged if the act was passed without consent. *The People v. McHatton et al.*, 2 Gil. 639, is to the same effect. *Johnson v. Hacker*, 3 Cent. Law Jour. 625, holds the same doctrine, and the opinion of the court, delivered by Nicholson, C. J., is a very able discussion of the subject, and his argument is conclusive. The Virginia case is supported by the *State of Maryland v. Jno. M. Carleton et al.*, 1 Gill 249, but we have found no other, and these cases seem to stand by themselves. Section 97, p. 1179, Wag. Stat , is a recognition of the doctrine that any change or alteration in the law made by the General Assembly after the execution of the bond, would have discharged the sureties before the enactment of that section, which expressly provides that bonds given in pursuance of that act (revenue act) shall not be considered void, nor shall any security be released by any change or alteration in the law made by the General Assembly, although made after the execution of the bond. Our conclusion in this case has not been reached but with great hesitancy, and on account of the public interests involved the question presented has received an unusual degree of attention ; but

reason, and the weight of authority, demand that the judgment of the circuit court be reversed and the cause remanded.   All concur.

REVERSED.