Schuster v. Weiss.

SCHUSTER v. WEISS *et al., Appellants.*

In Banc, February 14, 1893.

1. **Surety:** CHANGE OF CONTRACT. Any agreement between the creditor and the principal in an obligation or debt which essentially varies the terms of the contract without the consent of the surety will release the latter from liability.

2. ——: ——: OFFICIAL BONDS. Nor can the state change the contract of a surety on an official bond by changing or enlarging by legislative enactment the contract of the principal.

3. ——: APPEAL BOND: CHANGE OF LAW. Where, at the time of the execution of an appeal bond, the supreme court had appellate jurisdiction of the action only on appeal from the St. Louis court of appeals and the bond was made to conform to the law as it then existed, and subsequently it was so changed that the appeal was transferred to the supreme court and judgment was rendered therein without an intermediate judgment in the court of appeals, the sureties on such appeal bond will be discharged.

4. **Appeal, Change of Law as to.** The remedy by appeal may be modified or changed by law, there being no vested right in an appeal.

5. ——: CONSTITUTION: STATUTE. The act of the legislature of March 4, 1885 (Acts, p. 113), providing for the transfer to the supreme court from the St. Louis court of appeals of all causes pending in the latter cause on January 1, 1885, undisposed of at the time the act went into effect and which, pursuant to the constitutional amendment of 1884, fell within the final appellate jurisdiction of the supreme court, *held* constitutional.

6. **Appeal Bond, Action on:** SATISFACTION: PROBATE COURT. The facts that the plaintiff in an action on an appeal bond was the divorced wife of the principal obligor, and that on his death she wrongfully appropriated sufficient of his property to satisfy the claim on the bond, would constitute no defense, since the probate court is the proper tribunal for a remedy in such case.

*Appeal from St. Louis City Circuit Court.*—HON.
DANIEL DILLON, Judge.

REVERSED.

*J. W. Collins* for appellants.

(1) The bond sued on having been executed May 31, 1884, and the ejectment suit in which it was given having been without appellants' consent transferred by this court to the supreme court of Missouri, as required by legislative act of this state dated March 4, 1885, and which was not in existence and did not become a law for almost a year after the bond was signed, and could not have been contemplated by appellants at the time they entered into the obligation, was such a material variance of the terms and conditions of the bond, and such an enlargement of the risks assumed by appellants as sureties as to discharge them from all liability thereon.    *State to use v. Roberts*, 68 Mo. 234; *Pybus v. Gibb*, 6 Ellis & Black. 902; *Bank v. Ridgley*, 1 Harris & Gill, 324; *People v. Tompkins*, 74 Ill. 482; *United States v. Kirkpatrick*, 9 Wheat. 720; *City of LaFayette v. James*, 92 Ind. 240.    (2) Appellants have a right to stand on the exact terms, stipulations and conditions of their bond.    They are bound only in the manner, to the extent, and under the very circumstances pointed out and laid down in their obligation, in the carrying out and the performance of which every material act, condition and thing specified is to be done and performed as stipulated, and in the order and manner pointed out.    *Bank v. Traube*, 6 Mo. App. 221; *Yeatman v. O'Reilly*, 12 Mo. App. 568; *Singer Mfg. Co. v. Hibbs*, 21 Mo. App. 574; *Fisse v. Einstein*, 5 Mo. App. 78; *Simonson v. Grant*, 36 Me. 439; *Miller v. Stewart*, 9 Wheat. 681; *Tomlinson v. Simpson*, 33 Minn. 443; *M. & M. Co. v. Kimmel*, 87 Ind. 560; *Stull v. Hance*, 62 Ill. 52; *United States v. Boyd*, 15 Peters, 187; *Noyes v. Granger*, 51 Iowa, 227; *City of LaFayette v. James*, 92 Ind. 240; *Ward v. Stahl*, 81 N. Y. 406.    (3) The transfer of the ejectment suit by

an act of law to the supreme court will not answer the requirement of the bond or take the place of an appeal to that court.   This court having rendered no decision or judgment in the ejectment suit, and no appeal of that suit having been taken to the supreme court, the terms and conditions of the bond were not complied with, and appellants are discharged. *Nofsinger v. Hartnett*, 12 Mo. App. 598; *Nofsinger v. Hartnett*, 84 Mo. 549; *State to use v. Roberts*, 68 Mo. 234; *Pybus v. Gibb*, 6 Ellis & Black. 902; *Bank v. Ridgley*, 1 Harris & Gill, 234; *People v. Tompkins*, 74 Ill. 482; *United States v. Kirkpatrick*, 9 Wheat. 720; *City of LaFayette v. James*, 92 Ind. 240.

*Eber Peacock* for respondent.

(1) If the enlargement of the liability of appellants on their bond rests upon the idea that the transfer caused delay and "had the effect of granting Joseph Schuster, the principal in the bond, additional time," the answer is that such delay and the effect thereof will not avoid the suret es' liability unless the time was extended by virtue of a contract made by the creditors with the principal and without the concurrence of the sureties. *Adm'r v. Mannig*, 55 Mo. 142; *Obendorf v. Bank*, 31 Md. 126; *Reynolds v. Wait*, 5 Wend. 501; *Cornell v. Egan*, 1 N. Y. 265. And such agreement must be upon a sufficient consideration. *Ford v. Beard*, 31 Mo. 159; *Rucker v. Robinson*, 38 Mo. 154; *Wiley v. Hight*, 39 Mo. 130; *Bank v. Lewis*, 8 Pick. 458; *Bank v. Hill*, 10 Pick. 153.   (2) The appellants further contend, that the ejectment suit going to the supreme court by transfer instead of appeal had the effect of depriving them of a new bond to be given for the appeal, which would have been an additional security to them.   The respondent answers that there

is no provision in the bond sued on, or in the law, making any such condition. It is only in case a *supersedeas* is sought that a further appeal bond is required. 1 Revised Statutes, 1879, sec. 4713, p. 632; *Babbitt v. Finn*, 101 U. S. 7. (3) The act of the general assembly of March 4, 1885, providing for the transfer of cases respectively to the supreme court and the court of appeals according to the jurisdiction as fixed by the constitutional amendment adopted November 4, 1884, has been held to be constitutional. *State ex rel. v. Sloan*, 16 Mo. App. 541; *In re Garesche*, 85 Mo. 469. (4) The court below properly excluded testimony offered by defendants because in no sense whatever could the solvency or otherwise of a principal on the bond have enured to the benefit of the sureties in this form of action. (5) The instruction given by the court of its own motion was based on uncontroverted evidence and amounted to no more than a declaration of the legal effect of such evidence. *Scovill v. Glasgow*, 79 Mo. 449; *Sharp v. Johnstin*, 59 Mo. 557. (6) The condition in the bond sued on to stay waste and to pay accruing rents, dues, profits pending the appeal is general, and does not depend on a judgment of any particular court or any court. *Robinson v. Plimpton*, 25 N. Y. 484; *Smith v. Crouse*, 24 Barb. 433.

GANTT, J.—This is an action on the following bond: "Know all men by these presents that we, Joseph Schuster, as principal, and Henry Petersen, Christian Woltjen, Joseph Weiss and Christian Jansen as sureties, are held and firmly bound unto Augusta Schuster in the sum of $500, for the payment of which, well and truly to be made, we bind ourselves, our heirs, executors and administrators, jointly and severally by these presents. Sealed with our seals and dated at St. Louis, this thirty-first day of May, 1884.

"The condition of the above obligation is such that whereas, the said Joseph Schuster has appealed from the judgment rendered against him and in favor of said Augusta Schuster in the circuit court, city of St. Louis, Missouri, for the sum of one cent damages and for the possession of certain real estate, together with the costs. Now, if said appellant shall prosecute his appeal with due diligence to a decision in the St. Louis court of appeals and shall perform such judgment as shall be given by the St. Louis court of appeals, or by the supreme court of the state of Missouri, in the event of an appeal thereto, or such judgment as the said St. Louis court of appeals or said supreme court, in the event of an appeal as aforesaid, may direct the circuit court of the city of St. Louis to give, and if the judgment or any part thereof be affirmed, will comply with and perform the same so far as it may be affirmed and pay all damages and costs which may be awarded against him by the St. Louis court of appeals or said supreme court in case of an appeal as aforesaid, and shall pay all damages and accruing rents and profits, and shall stay waste pending said appeal, then this obligation shall be void, otherwise to remain in full force and effect.

"[SEAL.]         JOSEPH SCHUSTER,
"[SEAL.]         JOSEPH WEISS,
"[SEAL.]         CHRISTIAN P. JANSEN,
"[SEAL.]         HENRY PETERSEN,
"[SEAL.]         CHRIST. WOLTJEN.

"Approved in open court the thirty-first day of May, 1884.                    VOGEL, Clerk."

Augusta Schuster instituted an ejectment suit against Joseph Schuster to recover real estate in St. Louis. She recovered judgment in the circuit court, and Joseph took an appeal to the St. Louis court of

appeals and gave the above bond to supersede the judgment of the circuit court.

On the fourth of November, 1884, an amendment to the constitution of Missouri was adopted by the people, whereby the territorial jurisdiction of the St. Louis court of appeals was extended and the Kansas City court of appeals created. By this amendment the general assembly was authorized "to increase or diminish the pecuniary limit of the jurisdiction of said courts; to provide for the transfer of cases from one court of appeals to another court of appeals; *to provide for the transfer of cases from a court of appeals to the supreme court,* and to provide for the hearing and determination of such cases by the courts to which they may be transferred."

On the fourth of March, 1885, an act of the general assembly was approved, by which it was provided that "all cases which were pending in the St. Louis court of appeals on the first day of January, 1885, and which shall not have been disposed of at the time when this act shall go into effect, and which by the terms of the constitutional amendment * * * would come within the final appellate jurisdiction of the supreme court, shall be certified and transferred to the supreme court to be heard and determined by said court." The act contained an emergency clause and took effect the day of its passage.

In pursuance of this act, as the supreme court had appellate jurisdiction from the St. Louis court of appeals "in all cases involving title to real estate," this ejectment suit was by the St. Louis court of appeals transferred to this court on the sixteenth day of June, 1885. The judgment of the circuit court of St. Louis in said ejectment case was affirmed in the supreme court at the October term, 1887. *Schuster v. Schuster,* 93 Mo. 438. Joseph Schuster died in May, 1888, after the

affirmance of the judgment in ejectment and this action was brought against three of his sureties on the said appeal bond.

The breaches assigned were that Joseph Schuster had not paid the costs adjudged against him in said suit in the circuit court, amounting to $39.65, nor the damages and rents accruing after said appeal down to the rendition of possession, amounting to $1,960, and for $400, *permissive* waste in not repairing the houses. The defenses are, that the transfer of said ejectment cause to the supreme court without a hearing or judgment in the St. Louis court of appeals, to which court, only, it had been appealed, was without the consent of the sureties on said bond, and *varied, enlarged* and *changed* their liability as such sureties, and operated to discharge them from any and all liability thereon; that the conditions of said bond have not been broken; that the court of appeals has never rendered any judgment; that no appeal was ever taken from said court to this court nor have they failed to perform any judgment of this court, rendered on an appeal from the St. Louis court of appeals.

And for another defense, the sureties allege that plaintiff, who is the divorced wife of Joseph Schuster, upon his death took into her charge and appropriated to her own use a large amount of personal property, more than enough to satisfy this bond, without any right to do so; that there has been no administration on said estate and asks to have her account for the same in exoneration of these sureties. The trial court excluded all evidence on this last defense, and at the close of plaintiff's case refused two instructions, in the nature of a demurrer to the evidence, and *a third* as follows:

"3. The court instructs the jury, that it is admitted by the pleadings of the plaintiff and the defend-

Schuster v. Weiss.

ants in this case that after the bond sued on in this case was given for an appeal in the ejectment suit number 62,577 of Augusta Schuster against Augusta Schuster, and after such ejectment suit was appealed to and filed in the St. Louis court of appeals, that such ejectment suit was certified and transferred by said court of appeals to the supreme court of the state of Missouri, in pursuance of an act of the general assemby of the state of Missouri, and therefore the jury are instructed that if they should find from the evidence that such transfer and certification was made and done without the consent of the defendants then the same constituted and was a variance from the conditions of, and upon which the bond sued on in this case was given, and such certification and transfer operated to enlarge the liability of defendants on such bond and to discharge them from all liability on the same."

The mistake in the name, "Augusta" for "Joseph" in the description of the suit was clearly an oversight. The cause was evidently understood by the court and this misdescription could not have lead to the refusal to give the instruction.

The plaintiff's evidence tended to prove the value of the rents and profits and that the houses got out of repair, and that Joseph Schuster received the rents and made no repairs.

Defendants offered to prove that Mrs. Schuster, after her husband's death, took possession of all his property, broke open the safe and took his money, and appropriated it all, without administration, to her own use. All of which the court excluded and the defendant excepted.

The cause has been certified to this court by the St. Louis court of appeals, because in the opinion of that court "the discussion of the effect of the transfer

of said ejectment suit by that court to the supreme court would necessarily lead to the consideration of the statute from a, constitutional standpoint, which they were precluded from doing."

I. This court, *In re Garesche*, 85 Mo. 469, held that the statute providing for the transfer of causes, pending in the court of appeals, to this court, was constitutional, so far as the litigants themselves were concerned, but the right and liabilities of sureties on the appeal bonds in such cases were not under discussion in that case, and were not determined, nor has this particular question been decided by any other case in this court, so that we are at liberty to determine it upon the principles and analogies of the general law governing the rights and liabilities of sureties.

It is fundamental that any agreement between the creditor and the principal in an obligation or debt, which essentially varies the terms of the contract without the consent of the surety will release the surety from liability. *State v. McGonigle*, 101 Mo. 353. The contract of the surety is voluntary, without the expectation of profit or gain, and the law demands that he be dealt with in the utmost fairness and good faith. Brandt on Suretyship, sec. 330. The rule was stated by Judge LUMPKIN in *Bethune v. Dozier*, 10 Ga. 235: "No principle of law is better settled at this day than that the undertaking of the surety, being one *stricti juris*, he cannot, either at law or in equity, be bound further *or otherwise*, than he *is by the very terms of his contract;* and that if the parties to the original contract think proper to change the terms of it without the consent of the surety (which it is not disputed they have a right to), the surety is discharged. * * * Neither is it of any consequence that the alteration in the contract is trivial, *nor even that it is for the advantage of the surety. Non hæc in fœdera veni,* is an answer

in the mouth of the surety, from which the obligee can never extricate his case, however innocently or by whatever kind intentions to all parties he may have been actuated." *Nofsinger v. Hartnett*, 84 Mo. 549; *United States v. Kirkpatrick*, 9 Wheat. 720; *Bauer v. Cabanne*, 105 Mo. 110; *Tomlinson v. Simpson*, 33 Minn. 443; *Sharp v. Bedell*, 5 Gilman (Ill.), 88; *City of LaFayette v. James*, 92 Ind. 240; *Myres v. Parker*, 6 Ohio St. 501; *Markland M. & M. Co. v. Kimmel*, 87 Ind. 560; *People v. Tompkins*, 74 Ill. 482.

In *Nofsinger v. Hartnett*, 84 Mo. 549, the plaintiff recovered a judgment against John Ring. Ring appealed to the St. Louis court of appeals, giving James Riley as one of his sureties on his appeal bond. The condition of the appeal bond was that whereas Ring had appealed from said judgment, if he should "prosecute his appeal with due diligence to a decision in the St. Louis court of appeals, and perform such judgment as shall be given by the court of appeals or such as the St. Louis court of appeals may direct the circuit court of St. Louis county to give, and if the judgment or any part thereof be affirmed, will comply with and perform the same so far as it may be affirmed, and pay all damages and costs which may be awarded against him by said St. Louis court of appeals, then this obligation to be void, otherwise to remain in full force and effect." When the cause reached the court of appeals, the judgment was reversed and cause remanded, but on appeal to this court the judgment of the court of appeals was reversed and that of the circuit court affirmed. The mandate from this court affirming the judgment of the circuit court was sent directly to the circuit court and not to the court of appeals, and the court of appeals made no judgment reversing its action, and entering a judgment of affirmance, and sending its mandate to the circuit court.

In an action on the appeal bond in the circuit court of St. Louis, that court gave judgment for the surety and on appeal to the St. Louis court of appeals that judgment was affirmed. When it reached this court, SHERWOOD, Judge, reviewed the authorities, and held, that the condition of the bond not having provided for an affirmance by this court the surety was discharged. HENRY, C. J., RAY and BLACK, J. J. concurred in affirming the judgment, but placed their concurrence on the ground that the only judgment of the court of appeals was one *reversing the judgment* of the circuit court. They say: "If, on the reversal of the judgment of the court of appeals, a mandate had been sent from this court to that court, as it should have been, directing that court to enter a judgment affirming that of the circuit court, and the mandate had been obeyed, the liability of the surety on the appeal bond would have been within the express terms of his obligation. *But, in a suit on that bond, as the record now stands, where is to be found a judgment of the court of appeals affirming that of the circuit court? That such a judgment had been rendered, would be a necessary averment in a suit on that bond,* and one that the plaintiff would have to prove before he could recover. There is no legal fiction that the judgment of the supreme court reversing one rendered by the court of appeals becomes the judgment of the latter court. While it would have been the duty of the court of appeals to enter such judgment as the mandate of this court required, yet this court having passed by that court, and sent its mandate to the circuit court, no judgment of the court of appeals, has ever been rendered except that reversing the judgment of the circuit court. That which ought to have been done will be considered as having been done, *is a principle of equity*, sometimes successfully invoked in equity proceedings, but inapplicable to a case at law

in which a surety is sued upon his obligation of which there has in legal strictness been no breach."

And while the authorities all agree that the creditor and principal cannot vary or enlarge the liability of the surety, it is equally well settled that the state or government cannot change the responsibility of the surety on official bonds to the state by changing or enlarging the contract of the principal, *by act of the legislature.* Accordingly it was ruled in *State to use v. Roberts,* 68 Mo. 234 that a change in the law by which the time for the annual settlement of county collectors is fixed a month later than that provided in the law when the bonds of the collectors were given, operated to discharge the sureties. And in *Bartlett v. Attorney General,* Parker, 278, and *Bowdage v. Attorney General,* Parker, 278, and *Bowdage v. Attorney General,* Parker, cited and approved by METCALF, Judge, in *Grocer's Bank v. Kingman,* 16 Gray, 473, it was held that a bond given as security for a collector of customs was held not to extend *to a new duty* laid on certain articles after the bond was given. See also *Bonar v. McDonald,* 3 H. L. Cas. 226; *Pybus v. Gibb,* 88 English Common Law Reports, 902. These cases sufficiently indicate the law of the adjudicated cases.

Applying these principles to the case at bar, we find that the defendants bound themselves as sureties that Joseph Schuster should prosecute his appeal with due diligence to judgment of said St. Louis court of appeals. At the time of the signing and entering upon this obligation, this court had appellate jurisdiction of said action only *on appeal* from the court of appeals. Now without fault of said Schuster by operation of law said court was deprived of jurisdiction of said action; and it became a legal impossibility for him to comply with said condition. But it is argued, the case finally reached the supreme court, and

the bond was good for the performance of the judgment of the supreme court.    The bond was only to bind these sureties upon the condition that the cause should reach the supreme court, *first*, after a final judgment in the court of appeals, which was never rendered, and *secondly*, on appeal from judgment.    As it is, it reached that court by a legislative transfer, *never by appeal*.

As said in *Nofsinger v. Hartnett, supra*, by a majority of this court, "as the record now stands," where is to be found a judgment of the court of appeals affirming that of the circuit court?    And where is to be found the judgment affirming the judgment of the court of appeals *on appeal?*    That such a judgment has been rendered is a necessary averment, but as the legislature by its act deprived that court of its jurisdiction, *first*, to render such a judgment that part of the condition became legally impossible, and *secondly*, as no judgment was rendered, so also no appeal could be taken, hence *another necessary* averment is lacking.    If the surety was exonerated in *Nofsinger v. Hartnett* because of the mere failure to send the mandate to the court of appeals, a thing competent and lawful, how much stronger the reason for exempting him from liability, when in consequence of the act of the legislature, the condition for a *judgment of affirmance and an appeal* therefrom, have become legally impossible.    In the *Nofsinger Case*, a result was rendered in the supreme court which affirmed the judgment of the circuit court, but not in the *mode* of procedure nominated in the bond; in the case under consideration the result has been reached in the supreme court, but it reached that court by a procedure entirely unknown to the law when the bond was executed, and by a method not named in the bond and one ignoring the conditions of the bond.    It seems to

us there cannot be any difference in principle in the two cases.  In neither has there been a breach of the bond in legal strictness and that is absolutely essential to bind the surety.

The authority is ample that the security need not enter upon the discussion, whether such a transfer was tantamount to an appeal; nor is he bound to show that no injury resulted to him; neither will the court enter upon such an inqiry.  Brandt on Suretyship, sec. 338; *Mackay v. Dodge*, 5 Ala. 388; *Miller v. Stewart*, 9 Wheat. 681–702; *Whitcher v. Hall*, 5 B. & C. 269; 11 English Common Law, 225.  Nor will it affect his rights that it was clearly beneficial to him, if it appear that it *varied his responsibility* and was without his consent.

But if it were necessary to give a reason, could not defendants very properly say that they were willing to stand as surety for Schuster to the court of appeals at the time, because they knew the condition of the docket in said court, and that an appeal would be determined in not exceeding a year, whereas they would have been unwilling to stand as surety for a cause in this court when it was well known an appeal was not likely to be determined in less than three years, at that time, and the immediate and practical effect of said transfer was to grant Joseph Schuster additional time, at least two years, and necessarily increase the risk without the consent of his bondsmen? And might they not urge also, that when they executed said instrument such a transfer was not possible by any provision of the law then existing, and could not have been within the intention of the parties to said bond?  Finally, could they not urge, without successful contradiction, that, if the constitution and the law had not caused this transfer, a judgment of affirmance would have been rendered in said court of

appeals as contemplated in said bond, and, upon the happening of that event, one of two things might have followed: Joseph Schuster, being then only liable for a reasonable amount of rent and no waste, might have satisfied it of his own accord, but, if not, he had sufficient means out of which the judgment could have been made, and thus exonerated his sureties, or secondly, he could have appealed to this court; if he did, then to supersede the judgment of the court of appeals, he would have been compelled to give a new bond, or let execution go. If he gave a new bond, the sureties would have been at least compelled to contribute with these defendants to the satisfaction of the judgment. Had Schuster pursued either of these courses, it must have redounded to the benefit of defendants, and these are not mere speculative rights, but the condition of the bond guaranteed that he should do one or the other, and they have been deprived of the benefit of either by the change in the obligation by act of the state without their consent. The failure of the court of appeals to render judgment on the appeal and the transfer to this court extended the time of defendant's liability on the appeal bond, deprived them of the security of a new appeal bond on appeal to this court, or an execution upon the failure to give the bond in a seasonable time. To say under such circumstances this transfer had not increased their peril would be to shut our eyes and refuse to see the result. The variance is so clear and its consequences so manifestly hurtful to defendants, it operated to discharge them in law and equity from all further responsibility on this bond.

II. As already seen, this court, *In re Garesche*, 85 Mo. 469, held the act providing for the transfer of appeals from the court of appeals to this court constitutional.

It will be observed that the act makes no reference whatever to the bonds for appeal or the effect such transfer will have upon the sureties. As to the parties to the suit we have no doubt whatever of the power of the legislature to transfer the appeal to this court. It is the province of the legislature to provide the remedy of appeal and alter or modify the method of appeal.

Indeed it has been held by the supreme court of the United States, that "a party to a suit has no vested right to an appeal. * * * Such a privilege once granted may be taken away, and, if taken away, pending proceedings in the appellate court stop just where the rescinding act finds them, unless special provision is made to the contrary." *Railroad v. Grant*, 98 U. S. 398; *Ex Parte McCardle*, 7 Wall. 506. This power of the state to change the mode of proceeding in its courts, so long as it does not impair the obligation of the contract, is too well settled to be brought in question. And where a remedy equally efficacious is afforded to the suitor, he cannot be heard to complain. So here, while the legislature deprived the suitor of a hearing in the court of appeals, it at the same time secured him a hearing in the court of last resort in the state. But it is altogether a different proposition as to his sureties. They are not parties to the suit. They are obligors in a collateral undertaking. They entered into a private contract with Mrs. Schuster and agreed to be bound on certain conditions. Over their contract was the protection of the constitution. That contract was made with reference to the law as it then stood. In the light of that law it must be read. After it was made it was secure from any act of the legislature or amendment to the constitution impairing its obligations. *Gunn v. Barry*, 15 Wall. 610; *Water-Works Co. v Rivers*, 115 U. S. 674; Black on Constitutional Prohibitions, sec. 4.

"It is perfectly clear that any law which enlarges, abridges or in any manner changes the intention of the parties resulting from the stipulations in the contract necessarily impairs it. The manner or degree in which this change is effected can in no respect influence the conclusion; for whether the law affect the validity, the construction, the duration, the mode of discharge or the evidence of the agreement, it impairs the contract though it may not do so to the same extent in all the supposed cases." *Ogden v. Saunders*, 12 Wheat. 256–327. The extent of the change is immaterial; the imposing of conditions not in the contract, however minute or apparently immaterial, impairs the obligation. *Green v. Biddle*, 8 Wheat. 1; *Winter v. Jones*, 10 Ga. 190. Tested by these utterances from that tribunal whose judgment is final upon a question of this character, it seems clear that the statute imported new conditions into the contract, and imposed upon these sureties obligations they did not assume when they executed the bond.

The bond was drawn with reference to the form of procedure subsisting at the time. They could not anticipate a different mode. Chief Baron POLLOCK in *Mayor v. Oswald*, 3 Ellis & Blackburn, 665–677, in discussing the liabilities of sureties, said: "I think every contract (which does not *expressly* provide to the contrary) must be considered as made with reference to the existing state of the law; and, *if by the intervention of the legislature a change is made in the law* which in any degree affects the contract, such contract, made without some clear and distinct reference to the prospect or possibility of a change, does not hold with reference to the state of things as altered by the new law. I am not aware there is any authority which expressly decides this; but also I am not aware there is any authority to the contrary; and I think the intervention of the

legislature in altering the situation of contracting parties, in principle, is analogous to a convulsion of nature, against which parties may provide, but, if they have not provided, it would generally be considered as excepted out of the contract."

The learned Chief Baron could have found an authority in the constitution of the United States and the constitutions of all the states of the Union for the rule he announces. Our conclusion is that while the act of the legislature in question is constitutional and binding on the parties, that it impaired the obligation of these defendants, imported new and different conditions into the bond, and hence worked a discharge of the defendants and the court erred in not giving defendants' third instruction which declared this in effect.

III. As to the other defense, we think the court committed no error. If the plaintiff had property of Joseph Schuster to which she was not entitled, the defendants could have procured the appointment of an administrator, or had the estate ordered into the hands of the public administrator, and he could have pursued the legal remedies for discovering and recovering said property; but as it is, we think it constituted no defense to this action had the sureties been otherwise liable. The judgment is reversed without remanding, as no other result can be reached by another trial. SHERWOOD, BURGESS and MACFARLANE, JJ., concur. BLACK C. J. and BRACE, J. dissent. BARCLAY, J. did not take part in the decision.