Bassett v. American Surety Co. of N. Y., 210 Ill. App. 477.

approaching the crossing, evidence *held* to show freedom from wilful and wanton negligence in the operation of the train.

7. Appeal and error, § 1544*—*when plaintiff in negligence case cannot complain of error in instructions.* A plaintiff in a negligence case cannot complain because of the submission of the case to the jury with instructions that plaintiff could not recover in the absence of proof of ordinary care, on the ground that the declaration charged wilful and wanton negligence as well as ordinary negligence on the part of defendant, where he did not undertake to submit the question of wilful or wanton negligence, but in two or three of his general instructions covering the case told the jury that they could not find for the plaintiff unless they believed he was in the exercise of ordinary care for his own safety.

---

## Nettie Bassett, Administratrix, Appellee, v. American Surety Company of New York, Appellant.

### Gen. No. 6,524.

1. Appeal and error, § 1236*—*when question of sufficiency of declaration to support judgment may be reviewed.* The question of the sufficiency of the declaration to support the judgment may be brought before the Appellate Court for review notwithstanding the defendant has estopped itself from moving the trial court to arrest the judgment for the same reasons that it might have urged on the demurrer to the declaration.

2. Principal and surety, § 8*—*how undertaking of surety must be interpreted.* The undertaking of a surety must receive a strict interpretation, and his liability is not to be extended by implication beyond the terms of his contract.

3. Principal and surety, § 25*—*when surety released from liability.* As a general rule, any agreement between the principal and party secured, essentially varying the terms of the contract by which the surety is bound without the consent of the surety, will release him from liability.

4. Principal and surety, § 25*—*when surety discharged from liability on contract.* A surety is discharged from liability on his contract where the principal acts in another office or capacity from

that designated in the contract of suretyship, or where his responsibilities in the same office are increased.

5. WORKMEN'S COMPENSATION ACT—*when surety on appeal bond is discharged from liability by amendment of.* The surety on an appeal bond, conditioned upon the due prosecution of a writ of certiorari from the Circuit Court to review the action of the Industrial Board in awarding compensation and payment of any order or judgment rendered against it in case of affirmance, was discharged from liability where section 9 of the Workmen's Compensation Act of 1911 (J. & A. ¶ 5454), authorizing a claimant to procure a lump-sum settlement, subject to rejection by the employer, was amended in 1915 after the bond was given [Callaghan's 1916 St. Supp. ¶ 5475(9)], so as to take away the option of rejection from the employer, and the surety was consequently not liable for a lump-sum settlement awarded after the passage of such amendment.

Appeal from the Circuit Court of Peoria county; the Hon. CLYDE E. STONE, Judge, presiding. Heard in this court at the October term, 1917. Reversed and remanded. Opinion filed April 9, 1918.

STEVENS, MILLER & ELLIOTT, for appellant; O. P. WESTERVELT, of counsel.

COVEY, CAMPBELL & COVEY, for appellee; E. V. CHAMPION and H. A. EGOLF, of counsel.

MR. PRESIDING JUSTICE CARNES delivered the opinion of the court.

Nettie Bassett, administratrix, appellee, obtained an order from the Industrial Board of the State of Illinois under the provisions of the Workmen's Compensation Act of 1913 [Hurd's St. 1913, p. 1206, Callaghan's 1916 St. Supp. ¶ 5475(1) *et seq.*], that the Chicago, Rock Island & Pacific Railway Company should pay her $6.05 per week from April 4, 1914, for a period of 416 weeks as compensation for the death of her intestate, Robert L. Stockton. In January, 1915, the railway company obtained a writ of certiorari from the Circuit Court of Peoria county to review that ac-

tion of the Industrial Board and gave a bond in the
sum of $3,500, conditioned that it should duly prose-
cute said writ and pay the amount of any order, judg-
ment, costs and interest rendered and to be rendered
against it in case the order and judgment of the In-
dustrial Board should be affirmed in said Circuit Court.
Appellant, American Surety Company of New York,
was the surety on that bond.  The finding of the In-
dustrial Board was affirmed, the Circuit Court order-
ing that the writ be quashed February 5, 1916.  The
railway company took the case to the Supreme Court
on writ of error and that court on June 22, 1916, af-
firmed the judgment of the Circuit Court and rendered
judgment against the railway company for appellee's
costs taxed at $5 *(Chicago, R. I. & P. Ry. Co. v. In-
dustrial Board of Illinois,* 273 Ill. 528).  Thereafter,
November 3, 1916, appellee filed her petition with the
Industrial Board for a lump-sum settlement, and on
January 12, 1917, the board entered an order fixing
$1,608.19 as the amount found on computation under
the provisions of the statute of the present worth of
the deferred instalment payments.  Appellee was paid
by the railway company, or appellant, the full amount
due her for weekly instalments preceding and not in-
cluded in the computation fixing the lump sum.  She
refused to accept payment of instalments that had been
included in that computation.  She brought this action
of debt on the bond against the surety company alone
in February, 1917, in her declaration setting out the
bond and stating the facts as above noted, excepting
the fact that she had refused payments of weekly sums
that were included in the lump-sum computation.  She
alleged as breaches:  (1) nonpayment of the lump sum,
$1,608.19; (2) nonpayment of $5 costs in the Supreme
Court; (3) that the railway company did not prose-
cute its writ with effect; (4) nonpayment of the weekly
instalments included in the lump-sum computation;
and added the common counts, but filed an affidavit

of claim under section 55 of the Practice Act (J. & A.
¶ 8592), stating, in substance, that her demand was
for payment of money due under the lump-sum settle-
ment, and that the amount due her was $1,613.19. (The
amount of said lump sum and the $5 costs in the Su-
preme Court.)

The defendant demurred generally and specially to
the declaration. The court overruled the demurrer
as to the first, second and third assignments of breach,
and the common counts, and sustained it as to the
fourth assignment. (Failure to make weekly pay-
ments.) It is said by appellee, perhaps correctly, that
this action of the court amounted to a holding that the
obligation of the bond covered the default of the rail-
way company in payment of said lump sum. The court
may have sustained the demurrer to the fourth assign-
ment of breach charging failure to make weekly
payments of amounts that had been included in the
lump-sum computation on the ground that plaintiff
could not at the same time demand payment of a lump
sum and also of the weekly sums that had been merged
in the larger amount; but appellant, instead of abiding
by its demurrer, pleaded over to the whole declaration
repeating the facts there alleged touching the liability
to pay the lump sum, and averred as new matter that
it was ready and willing to pay the weekly payments
and had offered to do so, but the plaintiff had refused
and still refuses to accept them; and answered the
charge of nonpayment of costs in the Supreme Court
by pleading a tender and payment into court of that
amount and of the costs of this case up to the time of
the tender. Because an affidavit of claim was filed by
the plaintiff, an affidavit of meritorious defense was re-
quired by said section 55 of the Practice Act, and one
was filed, stating that the railway company and the de-
fendant had complied with the terms of the bond sued
on in making weekly payments up to September 25,
1916, and since that time the plaintiff had refused and

still refuses to receive them; that it had tendered in court the amount of the unpaid Supreme Court costs, together with all accrued costs, and that as to the non-payment of the $1,608.19, the amount of the award of lump-sum settlement, that sum was granted and allowed to the plaintiff after the bond was given and in a distinct and separate proceeding from the one in review upon which the bond sued on was made and executed, and was not an order or judgment rendered against the railway company in the said proceeding pending before the Circuit Court in which the bond was given. Appellee moved to strike the pleas and affidavit of merits from the files for insufficiency of the affidavit in not setting forth any legal defense to the cause of action declared on. The court sustained the motion, and the defendant, electing to stand by its pleading, judgment was entered as by default for $3,500 debt and $1,613.19 damages.

Under section 9 of the Workmen's Compensation Act (J. & A. ¶ 5454), in force when the bond was given and until July 1, 1915, appellee could on petition to the Industrial Board have a lump settlement named, subject to the right of the railway company to reject payment in that manner. But by an amendment in force July 1, 1915, such option was denied in this class of injuries (Hurd's St. 1915, 1916, "Employment," p. 1278, Callaghan's 1916 St. Supp. ¶ 5475[1]). In other words, her right to compel the railway company to pay in a lump sum the present value of the instalments rested entirely on a statute enacted after the bond was given. The substantial question in the case is whether the undertaking in the bond to pay the amount of any order, judgment, costs and interest rendered and to be rendered against the railway company in case the order and judgment of the Industrial Board should be affirmed in said Circuit Court raised an obligation to pay some other and different amount for which the company might become liable by reason

of subsequent legislation. That question was before the court on the motion to strike the pleas from the files. Perhaps it was necessarily involved in the demurrer to the declaration. Appellee says it was, and argues on the authority of *Home Mut. Fire Ins. Co. v. Garfield,* 60 Ill. 124, and other early cases, that appellant by pleading over admitted the construction of law and is estopped from raising the question here. Appellant answers that it was necessary to plead to the common counts and to the breach of nonpayment of Supreme Court costs, and necessary to plead the refusal of appellee to receive weekly payments, and therefore says that appellee's authorities do not apply. It is unnecessary to discuss the decisions on that question prior to *Chicago & E. I. R. Co. v. Hines,* 132 Ill. 161. It is there said that the rule is more of form than of substance, and that the question of the sufficiency of the declaration to support the judgment may be brought before the Appellate Court for review notwithstanding the defendant had estopped itself from moving the trial court to arrest the judgment for the same reasons that it might have urged on its demurrer to the declaration. To the same effect is *Chicago, R. I. & P. Ry. Co. v. People,* 217 Ill. 164, 172. See also, *Gillman v. Chicago Rys. Co.,* 268 Ill. 305, 310. We conclude the record presents for our determination the question whether the undertaking in the bond was broad enough to create an obligation of the surety to answer for the default of the principal maker in payment of this lump-sum settlement.

It is said in *Chicago & A. R. Co. v. Higgins,* 58 Ill. 128, 133: "The undertaking of a surety is to receive a strict interpretation. His liability is not to be extended by implication beyond the terms of his contract. To the extent, and in the manner, and under the circumstances pointed out in his obligation, he is bound, and no further." And in *Shreffler v. Nadelhoffer,* 133 Ill. 536, 551, quoting from Mr. Justice Story: "Noth-

ing can be clearer, both upon principle and authority, than the doctrine that the liability of a surety is not to be extended by implication beyond the terms of the contract. To the extent, and in the manner, and under the circumstances pointed out in his obligation, he is bound, and no further. It is not sufficient that he may sustain no injury by a change of the contract, or that it may even be for his benefit. He has a right to stand upon the very terms of his contract; and if he does not assent to any variation of it, and a variation is made, it is fatal." Illinois cases in support of the above rule are there collected. The authorities are again collected in *McCartney v. Ridgway,* 160 Ill. 129, 159. Among other illustrative holdings, we there find that as a general rule any agreement between the principal and the party secured, essentially varying the terms of the contract by which the surety is bound without the consent of the surety, will release him from responsibility. Any dealings between the principal and obligee amounting to a departure from the contract by which the surety is bound by materially varying or enlarging his liability without his consent will generally operate to discharge him. It is said: "The same result will follow, as a general thing, where the principal acts in another office or capacity from that designated in the contract of suretyship, or where his responsibilities in the same office are increased."

Applying these principles of law to the facts in this case, we see no ground for holding appellant liable for the payment of the amount named in the lump-sum settlement. If appellee had procured a voluntary change of the obligation of the railway company she could not have asked the surety to respond to the terms of the new agreement. We do not see how she can be held in a better position because she was able to and did coerce the change.

We have found few cases where the question of discharge of sureties by change of the obligation of the

principal effected by an after-enacted statute has been considered. It is said in 32 Cyc. 226: "If the contract of the principal is changed or enlarged by legislative enactment, or by order of court, the surety is nevertheless discharged." *Schuster v. Weiss,* 114 Mo. 158 (21 S. W. 438, 19 L. R. A. 182) is cited among other authorities. It is an interesting case supporting that text.

The rule governing liability of sureties on official bonds may be pertinent to the inquiry whether a change effected by law releases the surety. It is said in 29 Cyc. 1460, that sureties on official bonds are discharged by change in the office which are so great as to make the office quite a different one from what it was when the bond was executed, such as an extension of the term of the office, an enlargement of the territorial jurisdiction. The court in *People v. Tompkins,* 74 Ill. 482, had such a question under consideration where the principal on the bond came in possession of moneys under the rules and regulations of the commissioners of railroads adopted after the bond was executed, and it was held that the sureties were not liable because they were not chargeable with knowledge that he would be required to collect and have the custody of the funds in controversy.

In *Davis v. People,* 6 Ill. 409; *Governor for use of Thomas v. Lagow,* 43 Ill. 134; and *Governor for use of Thomas v. Bowman,* 44 Ill. 499, are found discussions of the effect of change of the principal's obligation by operation of law, and reference to other Illinois cases where it was held that the surety when entering into his contract should have contemplated the right and power of the legislature to change the obligation of the principal. We conclude that the present case falls within that class where the surety cannot be said to have undertaken to answer for the default of its principal in performance of duties and obligations raised by after-enacted laws differing substantially from the

obligation of the principal when the bond was executed, and not the result of any judgment entered in the suit in which the bond was filed.

It is not suggested in briefs of counsel that there is any question of the power of the legislature to change the liability of the railway company, or any question whether the Act of 1915 applies to liabilities fixed under the former statute. If there is such a question we have not considered it.

We have assumed from the pleadings and briefs of counsel that there is no deferred unpaid weekly payment not included in the computation of the lump-sum settlement, though the record is not entirely clear on that question. If there is in fact such an unpaid sum it could be recovered under the fourth assignment of breach. If that assignment refers, as we have assumed, to weekly instalments that are included in the lump-sum settlement, appellee could not recover those sums without entirely repudiating the lump-sum settlement, and whether she might in this case put herself in position to do that is a question not here presented.

We conclude that appellee under her declaration was not entitled to judgment for the amount of the lump-sum settlement, therefore the judgment must be reversed and the cause remanded. Either party should be permitted to amend its pleadings, if desired, and questions arising on the pleadings may be again presented and passed on in future proceedings not inconsistent with the views here expressed.

*Reversed and remanded.*