MARY B. WHITE v. MARTHA E. SMITH et al., Appellants.

Division One, April 1, 1903.

1. **Mortgage:** FORECLOSURE BY JUDGMENT: REDEMPTION. There is no statute allowing land sold under a judgment foreclosing a mortgage or deed of trust to be redeemed. A judgment in such case stands upon the same footing as any other judgment so far as the right of redemption is concerned.

2. ————: ————: ————: EQUITY. A petition praying that the mortgagor be permitted to redeem land sold under a judgment foreclosing a deed of trust, which admits the debt, the deed of trust, the judgment of foreclosure, the execution and sale, and charges no fraud, mistake, unfairness or overreaching in any of these matters, does not state a cause of action. The mortgagor does not have an absolute right in equity to redeem after foreclosure by suit, judgment and sale under execution.

3. ———: WIFE'S PROPERTY: SURETY: KNOWLEDGE: EXTENSION: DISCHARGE. A husband and wife joined in a note and secured it by a deed of trust on his and her separate lots, and later they made another deed of trust on these same lots as "additional security" for the payment of certain ,other notes executed by the husband to secure money with which to improve separate lots of his own in another city. The holders of this "additional security", which was given two years and a half after the notes were made, of which they also became the owners, knew that the money realized from the notes all went for improvements on the husband's lots and that none of it went to benefit her separate estate. *Held*, that the wife was a surety for her husband's debt, and will, therefore, be discharged from the lien of such "additional security" by anything that would discharge a surety or guarantor, for instance, the extension of the time for the payment of ,the debt for which the "additional security" was given, without her consent.

4. ———: ———: ———: ———: DISCHARGE. If a creditor, for a valuable consideration, makes an agreement with the principal debtor which suspends his right of action on the demand for a definite period of time, or postpones his right to foreclose the deed of trust given to secure that demand, without the consent of the surety, the surety is discharged, and the property mortgaged by the surety to pay that demand is discharged.

5. ———: ———: ———: ———: AGREEMENT TO POSTPONE FORECLOSURE. The creditors in writing, in July, agreed with the husband without the knowledge or consent of his wife,'who was surety in a deed of trust given to secure his notes, "that said sale shall not be made as advertised and also agree to not advertise said property for sale under said deed of trust until after September 11, 1899." *Held*, that, while the agreement does not in terms extend the time of payment of the debt, its effect is the same, for it *pro tanto* changes the rights of the surety, by postponing the surety's right to resort to the mortgage and be subrogated to the creditor's rights if the surety paid the debt. It, therefore, discharged the surety and the surety's mortgaged property from any further obligation to such creditors.

6. ———: ———: ———: SALE ANYHOW. Where a first deed of trust was given by a husband and his wife on their separate property, and afterwards as "additional security" for other of the husband's sole debts they give a deed of trust on their separate lots in which the wife joins· as his surety, and the holders of these notes buy up a judgment of foreclosure under the first deed of trust, and, in spite of the fact that the wife has been discharged from the "additional security" because of the extension of the husband's notes without her consent, sell her lots at the execution sale and buy them in; her remedy is not to offer to redeem, but to sue·to have the "additional security" ·cancelled, and the surplus obtained at the execution sale, after satisfying the first deed of trust, turned over to her.

White v. Smith.

7. ———: ———: ———: ———: ———: BARRED BY PRIOR EJECT-
MENT. And if before she ascertains that said notes and deed of trust
have been extended she is sued in ejectment by the trustee in said
deed of trust, she can in the suit for the surplus set up that fact,
and the court will enoin the enforcement of the judgment in eject-
ment.

Appeal from Pettis Circuit Court.—*Hon. Geo. F.
Longan*, Judge.

REVERSED AND REMANDED (*with directions*).

*Sangree & Lamm* for appellants.

(1) Knowledge on the part of appellants that
Mrs. White was surety for her husband on the notes
referred to in the petition, dated in 1890, and secured
by the Ittel deed of trust, was necessary before she
was entitled to any relief as surety. Ins. Co. v. Hauck,
83 Mo. 29; Pratt v. Conway, 148 Mo. 291; Harburg,
Ex'r, v. Kumpf, 151 Mo. 19; Hardester v. Tate, 85
Mo. App. 624; 2 Brandt on Suretyship and Guaranty
(2 Ed.), sec. 375; 1 Ibid, secs. 32 and 33; Colebrooke
on Collateral Securities, sec. 245. No such knowledge
is shown by the record and the court erred in its find-
ing on this issue. (2) The recognition of the obli-
gation by a promise to pay after a surety has knowl-
edge of the fact of an extension, revives the debt as
to the surety who had been discharged by a valid con-
tract between the creditor and principal debtor, and
this is true though the surety may not have known of
the legal effect of the contract of extension at the time
of his new promise. Ins. Co. v. Hauck, 83 Mo. 21;
Williams v. Boyd, 76 Ind. 286; Bank v. Holt, 58 Conn.
526; Bramble v. Ward, 40 Ohio St. 267; Bank v. Whit-
man, 66 Ill. 331; Porter v. Huydenpuyl, 9 Mich. 11.
The persuasive weight of the testimony shows such
recognition of the debt and promise to pay by Mrs.
White after she knew of the extension of time, and
the court erred in finding to the contrary. (3) The

court erred in its finding and decree in holding that the agreement to postpone the advertisement by the trustee under the Ittel deed of trust from July 22, to September 12, 1899, was such an extension of time as released respondent as surety on the notes she signed with her husband, and released the lien of the Ittel deed of trust. This results from the following propositions: (a) Because the giving of time which will discharge the surety, is "not a mere promise of indulgence, it is the act of the creditor depriving himself of the power of suing by something obligatory which prevents the surety from coming into a court of equity for relief, because the principal having tied his own hands, the surety can not release them." Nicholas v. Douglas, 8 Mo. 49; Brown v. Kirk, 20 Mo. App. 524; Hosea v. Rowly, 57 Mo. 357; Wayman v. Jones, 58 Mo. App. 313; Aultman v. Smith, 52 Mo. App. 351. That the creditor must, by some binding act, disable himself from suing, before the non-assenting surety can complain, is the universal rule in this class of cases. Bank v. Leavitt, 65 Mo. 562; Stillwell v. Aaron, 69 Mo. 542; Kansas City v. McGovern, 78 Mo. App. 513; Owings v. McKenzie, 133 Mo. 323; Weller v. Ranson, 34 Mo. 362; Rucker v. Robinson, 38 Mo. 154; Headlee v. Jones, 43 Mo. 237; Brown v. Kirk, 20 Mo. App. 524; Newcomb v. Blakely, 1 Mo. App. 289; Olmstead v. Latimer, 158 N. Y. 313. Now, in the case at bar, there were no restrictions placed on a suit by the contract. We could, the next moment, have sued Mr. White or Mrs. White on the notes, or sued to foreclose their equity of redemption in the real estate covered by the deed of trust. In fine, the contract did not touch the indebtedness at all, or postpone any legal or equitable action. (b) Because the error of the court in this behalf appears from the fact that in spite of conflicting decisions elsewhere, in Missouri the decisions "have an undoubted tendency to restrain the attempts of obligees

to evade the performance of their obligations to the very narrowest grounds." Hosea v. Rowley, 57 Mo. 359; Harburg v. Kumpf, 151 Mo. 25. (c) Because, even if the so-called extension contract could be construed to be an extension of time of payment of the secured indebtedness, yet it is of no avail because it is without a valuable consideration. The things White obligated himself to do were only those things he was already bound to do. Olmstead v. Latimer, 158 N. Y. 313. For example, he agreed to pay, and did pay, $180 on the past-due secured indebtedness. This was not a good consideration. Petty v. Douglass, 76 Mo. 70; Harburg v. Kumpf, 151 Mo. 16; Owings v. McKenzie, 133 Mo. 323; Regan v. Williams, 88 Mo. 577; Wolz v. Parker, 134 Mo. 458. Again, he bound himself to pay the costs of the pending advertisement, all of which was self-evidently his subsisting duty. It was the same as paying costs on the discontinuance of a suit, which has been held no consideration for an extension. Parmerlee v. Thompson, 45 N. Y. 58; McClung v. Mo. Trust Co., 137 Mo. 106. Again, he agreed that the tenants of lots 2 and 3 should attorn to Ittel, trustee. This was merely a subsisting right of the creditors. Owings v. McKenzie, supra; Johnson v. Houston, 47 Mo. 227; 2 Pingrey on Mortgages, sec. 1546. (4) The court erred in setting aside the judgment in the ejectment suit against plaintiff and her husband for possession and damages; because to entitle a party to relief against a judgment on the ground of mistake made by him, the mistake must have been caused without his negligence, and where the exercise of ordinary and reasonable diligence would not have disclosed the truth. The fact that the party was ignorant of the matters constituting the defense, does not alter the rule unless, by the exercise of ordinary diligence, he could not have discovered them, or was prevented from using such diligence by fraud, accident or the act of the opposite

party unmixed with any negligence on his own part. This is the general rule. 16 Am. and Eng. Ency. of Law, 383; Kerr on Fraud and Mistake (1 Am. Ed.), 407-8; Freeman on Judgments (3 Ed.), secs. 486, 500a, 502, 503, 504 and 506. To the same effect are our own decisions. Matson v. Field, 10 Mo. 100; Miller v. Bernecker, 46 Mo. 194; State ex rel. v. Englemann, 86 Mo. 563; Renfroe v. Renfroe, 54 Mo. App. 429; Reed's Adm'r v. Hansard, 37 Mo. 199; Carolus v. Koch, 72 Mo. 645. (5) The doctrine has been applied to a surety who sought relief from a judgment on a note, on account of a discovery of an extension of time. Vilas v. Jones, 1 N. Y. 274. And judgments in ejectment are protected by the same rule. Freeman on Judgments (3 Ed.), sec. 501; St. Louis v. Lumber Co., 98 Mo. 613; Clyborn v. McLaughlin, 106 Mo. 521; Chouteau v. Gibson, 76 Mo. 47; Bedford v. Sykes, 168 Mo. 8. The rule applies where a party has a remedy by motion in the original cause in the trial court. 16 Am. and Eng. Ency. of Law, pp. 377-8. Having a complete remedy at law in the original case, equity will not interfere. There is no diligence shown by the alleged surety. She should have consulted her principal who knew all. Smith v. Powell, 50 Ill. 21; Carolus v. Koch, supra.

*Wm. S. Shirk* for respondent.

(1) There was ample evidence justifying the court below in its first finding of fact, viz.: that plaintiff Mary B. White was only a surety for her husband, J. G. White, on the $7,000 note given to Smith and Cotton, and on the $5,000 given to Mitchell, and that Smith and Cotton and Mitchell knew such fact at the time the loans were made. (a) The money was borrowed on White's own property in Kansas City, Mrs. White having only a dower interest in it. (b) The money was used to pay off a prior incumbrance mainly and for

sewerage improvements. (c) The money was paid over to White for his own purposes. Not a dollar was used for Mrs. White's benefit or for the benefit of her property. (d) Mrs. White testified that she only signed the notes and joined in the original mortgage as surety for her husband, and that defendants knew that the money was for White's sole benefit and that she was only his surety. (e) Both Chappell, holder of the Mitchell note, and Wilkerson, agent for Smith and Cotton, were placed upon the witness stand, and neither one for a moment denied the truth of Mrs. White's evidence on these points. By their silence they admitted its truth, and by failing to testify that they did not have such knowledge, they likewise admitted that they had such knowledge, or at least such conduct raises a presumption of knowledge, which must be removed by positive evidence. It is settled in this State that the failure of a party to testify to a fact peculiarly within his knowledge, and which is an issue in the case against him, raises a strong presumption of knowledge on his part. Baldwin v. Whitecomb, 71 Mo. 658; Goldsby v. Johnson, 82 Mo. 605; Wilson v. Railroad, 108 Mo. 508; 2 Hart on Ev., sec. 1266. Where a wife signs a note with her husband, or when it is secured by a mortgage on her separate estate, her attitude toward the debt is that of a surety. Barrett v. Davis, 104 Mo. 549. And where the wife's title deed is recorded, as in this case, this of itself is notice to the creditors of her suretyship. 1 Brandt on Sur. and Guar. (2 Ed.), p. 45, sec. 35; Bank v. Burns, 46 N. Y. 170; Smith v. Townsend, 25 N. Y. 479; Trentman v. Eldridge, 98 Ind. 525. (2) (a) If a party becomes security for another for the payment of a debt, and such a debt is also secured by a mortgage upon land, given by the debtor, the land becomes the primary fund for the payment of the debt. Johnson v. Zinc, 51 N. Y. 333; 1 Story, Equity, sec. 499; Orrick v. Dunham, 79 Mo. 180; Bank v. Wood, 56 Mo. App. 219; Hayes v. Ward, 4 Johns. 123. (b) "By the

payment of the debt a surety has a right to be put in the place of the creditor, and to whatever means and remedy the creditor possesses to enforce payment from the principal debtor. Accordingly, if a creditor takes a mortgage from the principal debtor, the surety is entitled to it as an indemnity, and the creditor must do nothing by which it may be impaired as a security." Hayes v. Ward, supra; Calvo v. Davis, 73 N. Y. 221. (c) The exact point has been decided in this State. Bank v. Wood, 56 Mo. App. 218. (3) There was ample consideration for this contract. By it defendants received the following benefits: (a) The price of the advertisement of the sale which was postponed. Neither White nor Mrs. White contracted by the deed of trust to pay for two advertisements. (b) Appellants received the possession of the houses on lots 2 and 3 without the expense and delay of legal proceedings. (c) White's tenants attorned to the defendants and paid the rent to them instead of to White. Certainly, defendants were not entitled to this, except as the result of this contract. (d) White became the tenant of the respondents, in his wife's house, and agreed to pay them $20 per month rent therefor, even after the sale of the property under the deed of trust. Surely they were not entitled to this, except as a result of the contract of extension. On the other hand, White suffered the loss of all this. "In general, a waiver of any legal right at the request of another party, or any benefit to the defendant, or detriment to the plaintiff, or any act done at the defendant's request and for his convenience or to the convenience of the plaintiff, would be sufficient to support a promise by defendant." Given v. Course, 20 Mo. App. 132; Story on Contracts, sec. 548; Williams v. Jansen, 75 Mo. 681.

MARSHALL, J.—This is a bill in equity for leave to redeem the land in controversy from sale under exe-

cution, in an action to foreclose a mortgage, or if not allowed to redeem, then for the surplus arising from the sale, and for an injunction to restrain the enforcement of a judgment in ejectment. The trial court found for the plaintiff, permitted her to redeem, upon certain terms imposed, and enjoined the enforcement of the judgment in ejectment. The defendants appealed.

The case made is this: On October 10, 1888, the plaintiff owned lot 1 and the west half of lot 2, in block 93 of Smith & Martin's first addition to Sedalia. Her husband owned the east half of lot 2 and the whole of lot 3. They lived upon lot 1. Lots 2 and 3 were improved and the tenement houses thereon were leased. On October 10, 1888, Joseph G. White borrowed five thousand dollars from the Penn Mutual Insurance Company, and gave therefor his note secured by a deed of trust, in which his wife, the plaintiff, joined, covering all three lots aforesaid.

On February 6, 1890, Joseph G. White borrowed seven thousand dollars from the defendants, Martha E. Smith and Sarah E. Cotton, and to secure the same Mr. and Mrs. White executed their note secured by a deed of trust on certain land owned by Mr. White in Kansas City. At the same time Joseph G. White borrowed five thousand dollars from L. S. Mitchell, and to secure the same gave him a deed of trust on certain land owned by him in Kansas City. Thereafter the defendant, Phil E. Chappell, purchased the Mitchell note and still owns it.

S. P. Johns was surety for Joseph G. White, and to secure him Mr. and Mrs. White, on November 23, 1896, executed to him a deed of trust on all three of said lots, for thirty-five hundred dollars. Afterwards Johns had to pay the debt of White, for which he was surety, amounting to $232.05, and was about to foreclose the deed of trust, when at the request of Mr. and Mrs. White, the defendant, Phil E. Chappell, on Octo-

ber 30, 1897, purchased the deed of trust from Johns and still holds it.

On November 23, 1896, Mr. and Mrs. White executed to the defendant Ittel as trustee for the defendants, Mrs. Smith, Mrs. Cotton and Mr. Chappell, a deed of trust on the three lots aforesaid, as an additional security for the seven thousand dollars borrowed from Mrs. Smith and Mrs. Cotton, and the five thousand dollars borrowed from Mitchell, and then held by Chappell, as aforesaid, and to cover certain unpaid interest due on said loans. As a consideration for this additional security the holders of the notes secured reduced the interest on the loan to seven per cent. This deed of trust recites that it is subject to the deeds of trust given to the Penn Mutual Life Insurance Company, and to Johns, and contained a provision that if the makers did not pay off the said prior deeds of trust, the parties of the third part (Smith, Cotton and Chappell) might, at their option, do so, and in such event the same should become a debt due to said third parties "and be secured by this instrument in the same manner as said notes were secured."

The Ittel deed of trust was made to fall due October 20, 1898.

None of these deeds of trust were paid by Mr. and Mrs. White, and thereafter in July, 1899, Mrs. Smith, Mrs. Cotton and Mr. Chappell caused the trustee, Ittel, to advertise under the deed of trust dated November 23, 1896. Thereupon, Mr. White entered into the following contract with Mrs. Smith, Mrs. Cotton and Mr. Chappell (Mrs. White did not sign the contract and does not seem to have known of it at that time):

"Certain property of J. G. White is advertised to be sold this 22nd day of July, 1899, under a deed of trust made by said J. G. White and Mary B. White, his wife, to Adam Ittel, trustee for Martha E. Smith, Sarah E. Cotton and Phil E. Chappell, dated November 23, 1896, and recorded in the recorder's office in

and for Pettis county, in book 111, page 526. To which deed of trust and record thereof reference is specially made. In consideration of $180 paid by the said J. G. White to said Smith, Cotton and Chappell, on the indebtedness secured by said deed of trust and the payment of costs of said advertisement, said Smith, Cotton and Chappell *hereby agree that said sale shall not be made as advertised and also agree to not advertise said property for sale under said deed of trust until after September* 11, 1899. On September 12, 1899, said White agrees to deliver possession of the property covered by said deed of trust to the said Adam Ittel, trustee as aforesaid, for the use of said Smith, Cotton and Chappell, and at that time said White is to have the tenants in the houses on said lots 2 and 3 attorn to said Ittel as trustee as aforesaid. And said White who now occupies the building on said lot 1 agrees to rent the said lot 1 at a rental of $20 per month, payable monthly at the end of each month, and in case of the sale of said property under said deed of trust and a purchase of said lot 1 by said Smith, Cotton and Chappell, they agree to continue the said White as tenant of lot 1 and the buildings thereon for one year from September 12, 1899, at a rental of $20 per month, payable at the end of each month. Signed and delivered in duplicate by said parties this 22d day of July, 1899.''

Pursuant to this agreement Mr. White paid the $180 on the past-due indebtedness, and gave an order to the tenants on lots 2 and 3 to attorn to Ittel, the trustee, which they did, and the trustee has collected the rents ever since. A lease on lot 1 was also prepared for Mr. and Mrs. White to execute, but they refused to do so, and repudiated that part of the contract.

In the meanwhile, however, the Penn Mutual Life Insurance Company brought suit to foreclose its deed of trust, and made Mr. and Mrs. White, Mrs. Smith, Mrs. Cotton, Mr. Chappell, Mr. Johns, Mr. Lamm and

Mr. Ittel, parties defendant, and on June 3, 1899, a judgment of foreclosure was duly entered as prayed, adjudging the debt to be $5,171.70. No appeal appears to have been taken from this judgment. On October 14, 1899, Mrs. Smith, Mrs. Cotton and Mr. Chappell purchased the judgment from the insurance company, paying therefor $5,269.63.

This was the status of affairs on December 27, 1899, and on that date Mrs. Smith, Mrs. Cotton and Mr. Chappell, the beneficiaries, caused Mr. Ittel, the trustee, under the deed of trust, of November 23, 1896, to institute a suit in ejectment, against Mr. and Mrs. White, for the recovery of lot 1 aforesaid. They appeared, on February 5, 1900, and filed a joint answer, and such proceedings were had in the case that a judgment was entered for the plaintiff, on March 26, 1900, for possession, ninety-three dollars damages, and the rents and profits were assessed at twenty-five dollars a month. From this judgment the defendants appealed to the Supreme Court.

On March 31, 1900, Mrs. White began this suit, asking to have the Ittel deed of trust cancelled, and the enforcement of the judgment in ejectment enjoined.

On September 7, 1900, Mrs. Smith, Mrs. Cotton and Mr. Chappell, the assignees of the judgment foreclosing the Penn Insurance Company deed of trust, caused an execution to be issued on said judgment, and the land (lots 1, 2 and 3) was sold on October 6, 1900. Lot 3 was sold first. A third party became the purchaser, for $1,600. Lot 2 was next sold to Mrs. Smith, Mrs. Cotton and Mr. Chappell for $3,375. Lot 1 was sold last to Mrs. Smith, Mrs. Cotton and Mr. Chappell, for $3,000. Thus the sale realized $7,975. The sheriff applied $151.40 to costs, $5,587.88 to the judgment, and the balance of $2,235.69, he asked leave to pay into court, because Mrs. White, on the one hand, and Mrs. Smith, Mrs. Cotton and Mr. Chappell on the other, had served written notices on him claiming the surplus.

Mrs. White failed to prosecute her appeal in the ejectment suit, and on November 23, 1900, the appeal was dismissed by the Supreme Court for failure.

But on November 10, 1900, Mrs. White filed an amended petition in this case. The gravamen of that petition is, that she was a mere surety for her husband, and that the defendants knew that to be the fact when they took the deed of trust on November 23, 1896, and that by the agreement made between Mr. White and the defendants on July 22, 1899, the time for the payment of the debt by Mr. White was extended by the defendants, without the knowledge or consent of Mrs. White, and therefore she, as surety, was discharged, and the deed of trust on her lot 1 became extinct, and therefore the judgment in ejectment in favor of Ittel, the trustee thereunder, was without support or authority in law, and that she (Mrs. White) never knew of the agreement of July 22, 1899, until after the judgment in ejectment was rendered.

The petition alleges that after the institution of this suit, the defendants, Mrs. Smith, Mrs. Cotton and Mr. Chappell, assignees of the Penn Insurance Company judgment of foreclosure, caused an execution to issue on said judgment and the land to be sold, and that at the date of the sale, on October 6, 1900, the judgment, with interest, amounted to $5,586.93, and that lot 3 and the east half of lot 2 (this is a mistake as the sheriff's return shows it was the whole of lot 2) sold for $4,975, which was within $611 of the amount due on the judgment, and that by deducting the rents that the trustee had collected from the tenants on lots 2 and 3, amounting to $572, there was only $99 due on the judgment after the proceeds of the sale of lots 2 and 3 were applied to the judgment. The plaintiff then says she is entitled to redeem lot 1 and asks that the defendants be compelled to accept $99 as the balance due on the judgment, and that lot 1 be vested in her, or if she be not entitled to redeem, then she asks that the surplus

of $2,901 be decreed to her, and further that the deed of trust of November 23, 1896, to Ittel as trustee for the defendants, be cancelled, and that the judgment in the ejectment suit be enjoined and the execution issued thereon be quashed.

The circuit court cancelled the deed of trust of November 23, 1896, enjoined the enforcement of the judgment in ejectment, quashed the execution, and entered a decree allowing the plaintiff to redeem lot 1 from the sale under the judgment of foreclosure in favor of the Penn Insurance Company, upon condition that the plaintiff pay into court $899.13, to be applied as follows: if the judgment should be affirmed on appeal, the fund to go to the defendants as the price of redemption, but if the judgment was reversed and Mrs. White lost the case, then the fund or so much as was necessary for the purpose, was to be given to the defendants to pay them the rent for the house on lot 1, at the rate of $25 a month. The surplus of $2,235.69 was adjudged to the defendants. The court refused to take into account the rents collected by the trustee from lots 2 and 3.

From this judgment the defendants appealed.

## I.

The first question is whether the plaintiff is entitled to redeem.

There is no statute in this State allowing land sold under a judgment foreclosing a mortgage or deed of trust to be redeemed. A judgment in such a case stands upon the same footing as any other judgment so far as the right of redemption is concerned.

Section 4342, Revised Statutes 1899, provides for a foreclosure of a mortgage by a judgment "and that the equity of redemption may be foreclosed, and the mortgaged property sold to satisfy the amount due." In such cases no right of redemption, after a sale under the judgment, exists.

If, instead of proceeding on the mortgage by judgment, the holder of the mortgage or deed of trust elects, as he may under section 4343, Revised Statutes 1899, and has the mortgage or deed of trust foreclosed according to the power conferred by the instrument, and if the *cestui que trust* becomes the purchaser at the foreclosure sale, the mortgagor is entitled to redeem within twelve months after the sale, but is required to give bond to secure the interest to accrue within a year. [R. S. 1899, secs. 4343 and 4344; Johnson v. Atchison, 90 Mo. 48; Godfrey v. Stock, 116 Mo. 403; Updike v. Elevator Co., 96 Mo. 160; Vanmeter v. Darrah, 115 Mo. 153.]

The Penn Insurance Company mortgage or deed of trust was foreclosed by a judgment of the court, and the equity of redemption was foreclosed by the judgment, as contemplated by section 4342, Revised Statutes 1899. Hence, no statutory right of redemption is present in this case.

This is a bill in equity, and therefore it is claimed the plaintiff had a right of redemption in equity. No ground for invoking the aid of a court of equity is stated in the petition. The debt, the deed of trust, the judgment of foreclosure, the assignment of the judgment, the execution and sale are all admitted, and there is no intimation of any fraud, mistake, unfairness or overreaching in any of those predicates. The petition is predicated solely upon an absolute right in equity to redeem the land after the foreclosure of the deed of trust by a suit, a judgment, an execution and a sale. No authority is cited in support of the position and it is believed none can be found. The statute expressly provides for foreclosing the equity of redemption as well as for foreclosing the mortgage by the judgment. The doctrine that "the right to foreclose and the right to redeem are reciprocal and commensurable" [2 Hilliard on Mort. (4 Ed.), p. 2, sec. 2], does not apply to foreclosures under our statute, where the equity of re-

demption is also foreclosed, and applies to foreclosures by the mortgagee or trustee only as allowed by our statute. [Sec. 4343, R. S. 1899.]

But aside from all this it will be noted that this suit was begun on March 31, 1900. The Penn Insurance Company judgment was rendered on June 3, 1899. The petition asked no relief as against that judgment. No request was made for leave to redeem the land then, nor was there any doubt cast upon the force or effect of that judgment. Thereafter, on October 6, 1900, the judgment was executed and the property sold. The plaintiff stood by and saw her lot sold, and said not a word and did not offer to pay anything. Lots 3 and 2 were sold first, and according to the allegations of the petition and the evidence in this case, those two lots brought within $611 of enough to satisfy the judgment. The plaintiff did not offer then to pay that (or any other) amount and stop the sale and save her property. On the contrary, she stood by and permitted the sale to proceed. The sheriff had not received enough from the sale of the other lots to satisfy the execution, so he had no option but to proceed and sell the plaintiff's lot number 1. After he sold it, the plaintiff made no claim or demand that she had any right of redemption, but on the contrary she filed a claim, in writing, with the sheriff, for the surplus after satisfying the execution. Thus at that time she asserted no claim of any right to redeem. After that she did not give the bond to secure the accruing interest as required by section 4344, as a condition precedent to a right to redeem, even where the foreclosure is by the trustee or mortgagee and not by suit.

In short, no right to redeem is pleaded or proved, and that the plaintiff did not feel that she had safe ground to stand on in asserting a right to redeem, she pleaded, in the alternative, to be awarded the surplus if she was not allowed to redeem.

The judgment of the circuit court allowing the plaintiff to redeem was therefore erroneous.

## II.

The next question is, whether the plaintiff is entitled to the surplus resulting from the sale of the land under the judgment foreclosing the Penn Insurance Company deed of trust?

This depends upon whether the plaintiff is entitled to have the deed of trust of November 23, 1896, to Ittel, trustee for the defendants, cancelled and the judgment in ejectment enjoined. If she so succeeds there can be no question that she is entitled to the surplus, under the issues and pleadings as they stand in this case.

## III.

The original purpose of this suit was to have the Ittel deed of trust cancelled, and the enforcement of the judgment in ejectment enjoined. The plaintiff bases her claim upon the grounds, first, that she was a mere surety for her husband and that the defendants knew it, and that her separate property (lot 1) was mortgaged solely as surety for her husband's debt to the defendants; and, second, that as such surety, she was discharged and her property released from the mortgage, because by the agreement of July 22, 1899, the defendants extended the time for the payment of the debt for which she was surety, without her knowledge or consent.

There is no room to doubt that the plaintiff and her property were merely surety for her husband's debt to the defendants, and that the defendants knew such to be the fact.

The $7,000 loan from Mrs. Smith and Mrs. Cotton to the plaintiff's husband was made on February 6,

1890, as was also the loan of $5,000 from Mitchell to her husband, and these loans were secured by deeds of trust upon her husband's lands in Kansas City.

The Ittel deed of trust was given November 23, 1896. At that time the debts it was given to secure were more than two years and a half past due. The Ittel deed of trust expressly declared on its face that it was given as additional security for the original debts. No new note was given, but by the terms of the Ittel deed of trust the grantors were given until October 20, 1898, in which to pay the original debt, and until default the deed of trust could not be foreclosed.

It is true Mrs. White signed the original notes with her husband, but she testifies that Mrs. Smith and Mrs. Cotton and Mr. Mitchell knew that she was to be only a surety for her husband, and that of the $12,000 so borrowed by her husband, he expended $10,000 in improvements on the Kansas City property belonging to him, that was mortgaged to secure those loans, and the remaining $2,000 in providing sewers for the property, and that neither she nor her separate property profited a cent by the loan, and that the lenders knew these facts. Her testimony in this regard stands uncontradicted. The defendants were not even questioned on the subject.

In Vogel v. Leichner, 102 Ind. 55, it was said: "Whether a contract executed by a married woman is one of suretyship or not, will be determined by a consideration of whether or not it was made by her on her behalf, and upon a consideration moving to her or for the benefit of her separate estate. To the extent that the consideration was received by her, or inured to the benefit of her estate, she will be held to have contracted as principal. To the extent that the consideration was received by her husband, or that it went to pay a debt or liability, for which neither she nor her property was bound, it will be held to be a contract of suretyship. . . . And whether she was principal or

surety will be determined not from the form of the contract, nor from the basis upon which the transaction was had, but from the inquiry, was the wife to receive, either in person or in benefit to her estate, or did she so receive, the consideration upon which the contract rests?''

In Bank v. Burns, 46 N. Y. 170; Smith v. Townsend, 25 N. Y. 479, and Trentman v. Eldridge, 98 Ind. 525, it was held that where the title to the wife's property mortgaged for her husband's debts is recorded, such record will be sufficient notice to the creditors of the fact of suretyship.

In Hubbard v. Ogden, 22 Kan. 363, it was held that where a husband and wife execute a mortgage on two separate pieces of real estate, one of which belongs to the husband and the other to the wife, and the mortgage is executed for the purpose of securing the individual debt of the husband, the wife is surety for the husband to the extent of her mortgaged separate estate.

''Where a husband mortgages his property for his debt, and in the same mortgage the wife conveys her own separate property as security for the same debt, her property so conveyed will be treated in all respects as a surety.'' [Wheelwright v. DePeyster, 4 Edward's Ch. 232; Loomer v. Wheelwright, 3 Sandf. Ch. 135; McCollum v. Boughton, 132 Mo. 601.]

In Knight v. Whitehead, 26 Miss. 245, it is held that where the fact of suretyship does not appear from the mortgage, the wife must show that the creditor knew of the suretyship in order to entitle the property to stand in the position of a surety. But the fact of suretyship may be proved by parol.

In Leffingwell v. Freyer, 21 Wis. 398, it was held that when a wife mortgages her real estate for the debt of a firm of which her husband is a member, such real estate occupies the position of a surety, and if it becomes released at law equity will not charge it.

Brandt on Suretyship and Guaranty (2 Ed.), volume 1, section 35, lays down the general rule as follows: "While a married woman can not usually become personally bound for the debt of her husband, she may ordinarily pledge or mortgage her separate property for his debt, and if she does so, such property occupies the position of a surety or guarantor, and will be discharged by anything that would discharge a surety or guarantor who was personally liable." The author cites a large number of cases which fully support the text.

It follows, therefore, both from the uncontradicted testimony of Mrs. White and from the record evidence and physical facts in the case, that Mrs. White and her separate property, stood only as surety for her husband's debt, and that the defendants knew such to be the fact.

The defendants claim, however, that Chappell bought the Johns deed of trust, and that by the terms of the Ittel deed of trust he was entitled to buy it, and if he did so the Ittel deed of trust was to stand as security for the Johns debt. This is true. But the Johns deed of trust was given to secure Johns against loss as surety for plaintiff's husband, and Johns afterwards paid the debt for which he was surety. So this does not help the defendants at all, for this is a debt of the husband, and at best, the wife and her separate property is only surety for it.

The preponderance of the evidence likewise sustains the finding of the trial court that the plaintiff did not know of the contract of July 22, 1899, between her husband and the defendants until the conclusion of the trial of the ejectment suit, and that she never ratified that agreement, but within a very few days after that trial she brought this suit.

The serious question in this case, however, is, whether or not the contract of July 22, 1899, granted

·an extension of time to the plaintiff's husband and therefore, in law, operated to release the plaintiff and her property that stood as surety for her husband's ·debt? The contract was that the defendants "agree that said sale shall not be made as advertised and also agree to not advertise said property for sale under said deed of trust until after September 11, 1899." ·

The defendants claim that this was not an agreement extending the time for the ·payment of the debt, but only an agreement not to enforce the deed of trust until after September 11, and that they could have demanded and sued for the debt immediately, notwithstanding such agreement, and that it is only in cases ·where the payment of the debt is postponed that the surety is released.

The general rule of law is that, "when time is given to the principal debtor by a valid agreement which ties up the hands of the creditor, though it be for a single day, the surety is discharged." [Bank v. Leavitt, 65 Mo. l. c. 565.]

In Stillwell v. Aaron, 69 Mo. l. c. 542, it was said: "It has uniformly been held in this State, that, if a creditor, for a valuable consideration, make an agreement with the principal debtor which suspends his right of action on the demand for a definite period of time, without the consent of the surety, it operates to discharge the surety. [Rice v. Morton, 19 Mo. 263; Dodd v. Winn, 27 Mo. 501; Ins. Co. v. Carson, 31 Mo. 218; Smarr v. Schnitter, 38 Mo. 478; Bank v. Helmrick, 57 Mo. 100; Coster v. Mesner, 58 Mo. 550; Kincaid v. Yates, 63 Mo. 46; Bank v. Leavitt, 65 Mo. 562; State to use v. Roberts, 68 Mo. 234.]" To the same effect are the cases of Headlee v. Jones, 43 Mo. 237; Rucker v. Robinson, 38 Mo. 154; Barrett v. Davis, 104 Mo. 549; Schuster v. Weiss, 114 Mo. 158; Owings v. McKenzie, 133 Mo. 323.

In Smarr v. Schnitter, 38 Mo. 478, the facts were that Schnitter, as principal, and Stevens and McMaster

as sureties, executed a promissory note in favor of Smarr. After the maturity of the note and pending a suit upon the note, Schnitter, without the knowledge or consent of the sureties, executed a deed of trust to Smarr, to secure the note. The deed of trust provided "that it should not 'in any way conflict with the judgment sought to be had on said note in the Hannibal Probate Court against the estate of J. K. K. McMaster, except that no sale shall be forced on said estate and judgment until the expiration of eighteen months from the date of this deed.' It was further stipulated in the deed that if the parties to the note should within the time limited in the deed, i. e., within the eighteen months, pay off the whole of the debt, it was to be null and void; otherwise to remain in full force." Stevens, one of the sureties, pleaded that the taking of this deed of trust discharged him as surety on the note. The plaintiff contended, as here, that there was no time given for the payment of the debt, but that the extension of time applied only to the deed of trust, and upon this line asked the following instruction: "That the deed of trust by its terms did not give any further credit to Schnitter on said note, nor did it extinguish or suspend the right of Mrs. Smarr, the plaintiff, to sue said principal; nor did it operate to release said Stevens, his security." The court refused to give the instruction, and error was assigned in that regard. This court said: "It is very clear that this was an extension of the time of payment, and although it was not so stated in direct terms in the instruction given at the instance of the respondent Stevens, yet that seems to have been assumed as the correct interpretation of the deed, and the law was correctly declared."

This case is authority, therefore, for the proposition that Mrs. White's property was not only discharged from the Ittel deed of trust by virtue of the contract of July 22, 1899, but also that she herself was discharged from liability on the original $7,000 note of

February 6, 1890, to Mrs. Smith and Mrs. Cotton, and the $5,000 note to Mitchell.

And the principle announced in that case is sound, and peculiarly pertinent to this case. The Ittel deed of trust covered lot 3 and the east half of lot 2, owned by her husband, as well as the west half of lot 2 and the whole of lot 1, owned by her. As surety for her husband's debt, she was entitled if sued or without suit to pay the debt and proceed at once against the principal, and be subrogated to the creditor's right under the Ittel deed of trust, to hold her husband's property for the debt. This right, at least so far as the immediate right to proceed against her husband's property was concerned, was cut off by the agreement of July 22, 1899. True that agreement does not in terms extend the time for the payment of the debt, and so far as the words employed go, postpones the right of the creditor to foreclosure of the deed of trust to a time definite, but its effect is the same, for it *pro tanto* changes the rights of the surety; and postpones the right to resort to the mortgage if the surety paid the debt.

There can be no doubt that if the creditor had released the husband's property from the operation of the deed of trust, without relinquishing or postponing his right to sue on the note, the surety and her property would be discharged and released. [24 Am. and Eng. Ency. of Law (1 Ed.), p. 851, and the many cases cited in note 2.]

And the principle is the same if, instead of releasing the lien or mortgage on the husband's land, the creditor simply postpones the right to proceed against it. For in both cases the contract with the principal is changed without the consent of the surety, and is no longer the contract for whose performance the surety became responsible, and therefore the surety is released. The difference between an absolute release of the lien and a postponing of a right under it, is only a

difference of degree and not of legal effect, so far as the surety is concerned.

It follows that Mrs. White and the Ittel deed of trust on lot 1 and the west half of lot 2, being her separate property, were released by the contract of July 22, 1899.

This being true the trustee under that deed of trust was not entitled to recover possession of her property as he did in the ejectment suit on March 26, 1900, and as Mrs. White did not know of the contract of July 22, 1899, until after the conclusion of the trial of the ejectment case; she could not interpose that contract as a defense in that suit, but may avail herself of it in this action, which was begun as soon as she learned of that contract, which was within a few days after that judgment was rendered. For these reasons the trial court was right in cancelling the Ittel deed of trust on Mrs. White's property, and in enjoining the enforcement of the judgment in ejectment, and in quashing the execution issued thereon.

It also follows from the premises that the surplus arising from the sale of lots 1, 2, and 3, under the Penn Insurance Company judgment of foreclosure, belong of right to Mrs. White.

The rents collected by the trustee, Ittel, from lots 3 and the east half of lot 2 after he was put into possession under the contract of July 22, 1899, can not be taken into account in this case, because they were collected from the husband's property and were properly applied to the payment of the husband's debt. The rent collected by Ittel from the west half of lot 2, that belonged to Mrs. White, between the date on which the tenant attorned to Ittel, under the contract of July 22, 1899, and the date of the sale under the Penn Insurance Company judgment, must be regarded as collected by him as trustee for the plaintiff, and if he has turned it over to the defendants, that amount should be added

to the surplus aforesaid, and the plaintiff be given a judgment therefor.

The judgment of the circuit court is reversed and the cause remanded to that court with directions to ascertain the amount of rent that was collected by Ittel from the west half of lot 2, between the date of the attornment aforesaid and the sale aforesaid, and add that sum so ascertained to the surplus resulting from the sale under the Penn Insurance Company judgment, and to enter a judgment for the plaintiff for the total amount so found, and to also return to the plaintiff the sum of $899.15 with any accumulated interest thereon, heretofore paid into court under the decree of the circuit court as a condition to the right to redeem, and to adjudge all the costs in the circuit court against the defendants.  All concur.