# CLAUDE HARDWICKE, Respondent, v. RICHARD S. BARNES, Appellant.

### Kansas City Court of Appeals, May 4, 1914.

1. **EQUITY: Cancellation of Deed: Suretyship.** The plaintiff instituted this action in equity to cancel a certain deed to land, which is in reality a mortgage executed by the grantor as surety for the payment of a debt of another. *Held,* that anything that would discharge a surety from personal liability to pay the debt of his principal would discharge his property from a lien securing his contract of suretyship.

2. ——: ——: ——. Where a mortgage is given to secure the debt of another, for which the mortgagor assumes the liability of a surety, any change in the form of a debt or the terms of payment, as by renewal, extension of time, or otherwise, not assented to by the mortgagor, will discharge the mortgage, unless the mortgage itself contains provisions authorizing such arrangements to be made.

3. ——: ——: ——: **Statute of Limitations.** An equitable action, prosecuted by the holder of an equitable title, to quiet title is in the nature of a real action which could be barred only by ten years adverse possession, the statute does not begin to run until the dispossession of the equitable holder.

Appeal from Platte Circuit Court.—*Hon. A. D. Burnes,* Judge.

AFFIRMED.

*Fyke & Snider* for appellant.

*Guy B. Parks* for respondent.

JOHNSON, J.—This is an action in equity begun in the circuit court of Clay county January 22, 1908, for the cancellation of a certain deed to land which is alleged in the petition and shown by the evidence to have been in reality a mortgage executed by the grantor as surety for the payment of a debt of another.

Plaintiff whose title to the land is derived through a subsequent deed of trust executed by the same grantor, alleges the discharge of the surety and consequent extinguishment of the lien of the first mortgage which, however, has not been released of record and is the basis of the claim of title asserted by defendant who for six years before the commencement of this suit had been in possession of the land. The action was tried in Platte county where it was sent on change of venue and judgment was rendered for plaintiff An appeal was allowed defendant to this court but we transferred the case to the Supreme Court on the

ground that it involved title to real estate. The Supreme Court thought differently and retransferred it. [See Hardwicke v. Barnes, 161 S. W. 744, 253 Mo. 6.]

The facts of the case are as follows: December 17, 1889, the Thornton Distilling Company, as principal, and Henry P. Linderman and others, as sureties, executed and delivered a promissory note to defendant for $7000, due eighteen months after date. On the same date the company, which had been operating a distillery in Clay county, executed and delivered to S. J. Sandusky, trustee, a trust deed, in the nature of a mortgage conveying certain real and personal property to secure the payment of the note. And on the same date Linderman who, as stated, signed the note as surety, executed and delivered to defendant, a deed in the form of a warranty deed, conveying ten acres of land in Clay county owned by him, for the recited consideration of $5000. This deed, as shown by its face, was in substance a mortgage to secure the payment of the note and provided that "upon the payment of a certain note for $7000, this day executed by the Thornton Distilling and Milling Company to the said Richard S. Barnes and which note was signed by said H. P. Linderman, the real estate aforesaid is to be deeded by said Richard S. Barnes, back to said Linderman." This deed was not filed for record until August 3, 1891. The ten acres conveyed in it is the land involved in the present controversy.

Afterward Sandusky, as trustee, and defendant as *cestui que trust* of the trust deed executed by the company, brought suit as plaintiffs in the circuit court of Clay county, returnable to the October term, 1892, to recover judgment on the $7000 note and to foreclose the lien of the deed of trust. Linderman was joined as a defendant and duly served with process. The record of that case, including the judgment rendered therein, was received in evidence over the objection of defend-

ant who insisted and still insists that it was *res inter alios acta*.

The record of the hearing and judgment discloses that the merits of the cause were adjudicated doubtless in accordance with an agreement the parties had reached before the hearing. It was adjudged that there was still due on the $7000 note a remainder of $1921, and personal judgment was rendered in that sum in favor of Barnes (the present defendant) against the Distilling Company, the principal obligor of the note, and a foreclosure of the lien of the mortgage of the company securing the note was adjudged. But judgment was rendered in favor of the sureties on the note, including Linderman, on the ground, as we understand the record, that they had been released by an extension of time Barnes (the payee) had granted to the Distillery Company without the consent of the sureties.

Defendant's claim of title is based on the deed from Linderman which, as we have shown, was in reality a mortgage to secure a debt upon which his liability was that of a surety and from which he was subsequently released by the judgment of a court of competent jurisdiction. We now turn to the facts on which the claim of plaintiff is founded.

On January 28, 1891, Linderman and his wife executed and delivered to Samuel Hardwicke as trustee for W. C. Lemon, a deed of trust conveying ten acres of land above mentioned to secure notes of Linderman to Lemon, amounting to $1400. Hardwicke, the trustee, was the father of plaintiff and father and son were practicing law in Liberty as partners and incidentally were doing business as loan brokers. Linderman, who was in financial difficulties, and was threatened with a forced sale of some of his property, applied to Hardwicke & Hardwicke for relief and they had him execute the notes and the trust deed to Lemon who had his office with them, in the hope that they might sell the notes for the benefit of Linderman. They were dis-

appointed and afterward they, themselves, advanced about $900, for the account of Linderman and on the security of the notes and trust deed. Lemon, as payee, indorsed the notes without recourse and delivered them to Hardwicke & Hardwicke who continued to hold them and the trust deed as security for Linderman's debt to them. Hardwicke, senior, died in 1895, and plaintiff succeeded to his interest in the transaction. In 1892, Linderman becoming completely submerged in his financial difficulties surrendered possession of the ten acres to Hardwicke & Hardwicke and they remained in possession, by tenants, until the death of Hardwicke senior, when the possession was continued in plaintiff by his tenants until 1901 or 1902. At that time defendant obtained possession of the land and has since kept it. There are other facts in the record but those stated control the disposition of the case.

There can be no question of the validity of plaintiff's claim to the possession of the land as against Linderman and all others except defendant. The Lemon notes were valid obligations of Linderman to the extent of the advances plaintiff made upon those notes and the deed of trust securing them, and the subsequent delivery of possession of the land to plaintiff invested him with the right to hold possession against Linderman and all who might claim under him, except the holder of a lien prior to that of the Lemon deed of trust. The controlling issue in the case is the validity of defendant's claim founded on the deed in the nature of a mortgage which Linderman executed and delivered to defendant more than a year before the date of the Lemon notes and trust deed. We shall ignore the fact of the withholding of that deed from record and treating it as though filed before the beginning of the Lemon transaction we hold that it gave defendant a lien on the land superior to that subsequently created in favor of plaintiff. But that lien was for the security of the obligation Linderman had incurred as surety for the

Distillery Company. It was incidental to the contract of suretyship and when the obligation created by that contract was released the incidental mortgage lien *ipso facto* was released. Anything that would discharge a surety from personal liability to pay the debt of his principal would discharge his property from a lien securing his contract of suretyship. [Johnson v. Bank, 173 Mo. 171; White v. Smith, 174 Mo. 186; Higgins v. Harvester Co., 181 Mo. 301.]

The rule thus stated in 27 Cyc. 1413: "Where a mortgage is given to secure the debt of another, for which the mortgagor assumes the liability of a surety, any change in the form of the debt or the terms of payment, as by renewal, extension of time, or otherwise, not assented to by the mortgagor will discharge the mortgage, unless the mortgage itself contains provisions . horizing such arrangements to be made."

The record in the foreclosure suit brought against the Distillery Company and the sureties on the $7000 note shows a final judgment on the merits discharging the sureties including Linderman. It is true the lien sought to be foreclosed was not the same as that created by Linderman's mortgage but the debt for which personal judgment was prayed was the same and the effect of that judgment being the complete discharge of Linderman from the obligation he had assumed as surety, the discharge of the incidental lien followed as a matter of course and thereafter no claim of title or possession could be predicated of the extinguished lien.

It is idle to speak of that suit as *res inter alios acta* because plaintiff was not a party to it. As the holder of the junior lien he was privy in representation to Linderman and could assert any defense to the first mortgage available to Linderman. [Coleman v. Cole, 158 Mo. 253; Storage Co. v. Glasner, 169 Mo. 48; Jones on Mortgages (2 Ed.), sec. 746.] We do not sanction the contention that this suit was not begun until limitations had barred the action. The notes held by plain-

tiff matured in January, 1892, and the act of 1891 (Sec. 1892, R. S. 1909) is not applicable.    This being an equitable action, prosecuted by the holder of an equitable title, to quiet title is in the nature of a real action which could be barred only by ten years adverse possession.    [Mylar v. Hughes, 60 Mo. 105; Norfleet v. Hutchins, 68 Mo. 597; Haarstick v. Gabriel, 200 Mo. 237.]

Plaintiff was not dispossessed until 1902, and the action being instituted in 1908, was not barred since limitations did not begin to run until the dispossession of plaintiff.

The judgment is affirmed.    *Ellison, P. J.,* concurs; *Trimble, J.,* not sitting, having been of counsel.